**CHASE MANHATTAN BANK, N.A., Plaintiff–Appellant,**

v.

**CELOTEX CORPORATION and U.S. Mineral Products Company, Defendants,**

**Dana Corporation, Defendant–Appellee.**

**No. 723, Docket 94–7605.**

United States Court of Appeals, Second Circuit.

Argued March 1, 1995.

Decided June 5, 1995.

*Oil Refining v. Garrity Oil Co.,* 884 F.2d 1510,     1517 (1st Cir.1989).

Ivan B. Rubin, Levy Phillips & Konigsberg, New York City (Alani Golanski, Levy Phillips & Konigsberg, New York City, Matthew G. Leonard, Robert R. Elliot, III, New York City, of counsel), for plaintiff-appellant.

John D. Briggs, Howrey & Simon, Washington, DC (Helen K. Michael, James G. Kress, Howrey & Simon, Washington, DC, of counsel), for defendant-appellee.

\* The Honorable Deborah A. Batts, Judge, United States District Court for the Southern District of New York, sitting by designation.

Before: LUMBARD and WINTER, Circuit Judges, and BATTS, District Judge.\*

WINTER, Circuit Judge:

Chase Manhattan Bank, N.A. ("Chase") appeals from Judge Broderick's grant of summary judgment for Dana Corporation ("Dana"). The underlying dispute concerns damage to a building owned by Chase that has asbestos-containing materials, some of which were allegedly manufactured by Dana. Judge Broderick held that Chase's claim was precluded by the doctrine of *res judicata* because a substantially identical lawsuit brought by the prior owner of the building, the New York Plaza Building Company ("NYPBC"), was abandoned with prejudice. We hold the doctrine of *res judicata* inapplicable because Chase at all times owned an option to purchase the building that was "in the money." That is, the option provided a right to purchase the building at a price substantially below market value. Consequently, after Chase's purchase of the building, NYPBC had little incentive to pursue its action because it could not show that the sale price was diminished because of the presence of asbestos. Chase is thus not precluded from asserting its claim.

Briefly stated, the facts are as follows. On March 13, 1967, before completion of the construction of the building in question, One New York Plaza, Chase executed a lease and option with NYPBC. The option gave Chase the right to purchase the building on certain dates at a price set by a stipulated formula. After the building was completed, the presence of asbestos was determined to be harmful. However, at all pertinent times, the option was "in the money," notwithstanding any reduction in the building's market value due to the presence of asbestos.

In 1987, Chase brought the present action for property damage in the Southern District against three asbestos manufacturers, U.S. Mineral Products Company, Celotex Corporation, and Dana. At or near the same time, NYPBC brought a similar property damage

action against the same three asbestos manufacturers, also in the Southern District. Both complaints alleged strict liability and negligence. The complaints alleged similar damages, including abatement costs, air monitoring costs, and diminution of the value of each plaintiff's interest in One New York Plaza. The only material difference between the actions was that NYPBC's complaint also alleged a breach of implied warranty. Both actions were assigned to Judge Broderick but were never formally consolidated.

In September 1989, Chase bought the building. During 1990 and 1991, NYPBC informed Chase that it intended to terminate its action against the three asbestos manufacturers. Celotex declared bankruptcy in October 1990. In the spring of 1992, the parties to NYPBC's action entered into a stipulation dismissing the action with prejudice. At no time did Chase either object to the dismissal of, or attempt to intervene in, NYPBC's action.

In early 1993, Dana moved for summary judgment in the present case on the ground that *res judicata* barred Chase's action. The district court granted the motion, holding that Chase was "in privity with [NYPBC] during the option period." *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 830 F.Supp. 790, 792 (S.D.N.Y.1993). The court also emphasized that Chase knew of the impending settlement of NYPBC's suit but chose not to participate. Chase brought the instant appeal.[1]

▇▇▇ *Res judicata* assures the finality of judgments by precluding a party to a lawsuit from litigating a claim more than once. *See, e.g., In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir.1985). A voluntary dismissal with prejudice is an adjudication on the merits for purposes of *res judicata*. *See Nemaizer v. Baker*, 793 F.2d 58, 60 (2d Cir. 1986).

▇▇▇ *Res judicata* may also preclude claims by parties who were not involved in the earlier lawsuit. When an asserted claim is identical to one that has been previously litigated, relitigation may be barred to conserve judicial resources and to allow the prevailing party to enjoy the benefits of its victory and avoid further costs. However, claim preclusion may be asserted only when the precluded party's interests have been represented in a previous lawsuit. *See Expert Elec., Inc. v. Levine*, 554 F.2d 1227, 1233 (2d Cir.) ("Generally speaking, one whose interests were adequately represented by another vested with the authority of representation is bound by the judgment, although not formally a party to the litigation."), *cert. denied*, 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977).

▇▇▇ *Res judicata* may bar non-parties to earlier litigation not only when there was a formal arrangement for representation in, or actual control of, the earlier action but also when the interests involved in the prior litigation are virtually identical to those in later litigation. *See* Allan D. Vestal, *Res Judicata/Preclusion* V–125–26 (1969). As Professor Vestal has written, "the key seems to be that [the] interests [of the non-party] have been adequately represented by others who have litigated the matter and have lost ..." *Id.* at 128. Federal courts have sometimes called this "virtual representation." *See Aerojet–General Corp. v. Askew*, 511 F.2d 710, 719 (5th Cir.) (person can be bound by prior judgment "if one of the parties to the suit is

---

1. The parties' briefing appears to be based on an unspoken mutual assumption that the law of New York governs this diversity action. In fact, a genuine legal issue exists as to whether federal law or New York state law governs the *res judicata* effect of a judgment of a federal court sitting in diversity upon a subsequent federal diversity action. In *Gelb v. Royal Globe Insurance Company*, 798 F.2d 38, 42 n. 3 (2d Cir.1986), *cert. denied*, 480 U.S. 948, 107 S.Ct. 1608, 94 L.Ed.2d 794 (1987), we stated that federal law should govern in such circumstances if necessary to vindicate the Federal Rules of Civil Procedure. We further suggested that, because state law controls the *res judicata* effects of state court judgments, federal courts perhaps should have analogous power to define the effects of their judgments.

However, as we observed in *Gelb*, "Federal courts routinely apply state law to determine the preclusive effect of a federal diversity judgment in a subsequent diversity action." *Id.* In any event, we have not definitively ruled on this question and decline to do so here because federal law and New York state law both require the same result in the instant case. *Harborside Refrigerated Servs. v. Vogel*, 959 F.2d 368, 373 (2d Cir.1992).

so closely aligned with his interests as to be his virtual representative"), *cert. denied,* 423 U.S. 908, 96 S.Ct. 210, 46 L.Ed.2d 137 (1975).

Under New York and federal law, *see* Note 1, *supra,* concepts summarized by the term privity are looked to as a means of determining whether the interests of the party against whom claim preclusion is asserted were represented in prior litigation. In *Watts v. Swiss Bank Corporation,* 27 N.Y.2d 270, 317 N.Y.S.2d 315, 265 N.E.2d 739 (1970), for example, the New York Court of Appeals stated that although privity did not possess a "technical and well-defined meaning," it described a rule by which "a person may be bound by a prior judgment to which he was not a party of record." *Id.,* 317 N.Y.S.2d at 320, 265 N.E.2d at 743. The Court of Appeals went on to enumerate certain parties encompassed by the term privity: "It includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action." *Id.*

Privity is a well-established component of the federal law of *res judicata.* A privy is bound with respect to all the issues that were raised or could have been raised in the previous lawsuit. *Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948). As the federal doctrine of *res judicata* applies to "a case involving the same parties or their privies," *In re Teltronics Servs., Inc.,* 762 F.2d at 190, the federal doctrine uses privity in a way similar to its use under New York law.

Dana argues that the requisite privity exists in the instant matter because Chase, as the transferee of the building, is a successor to NYPBC's property interest. Dana contends that privity exists notwithstanding Chase's ownership of the option because an option holder does not have a property interest under New York law. *See In re Water Front on Upper New York Bay,* 246 N.Y. 1, 157 N.E. 911, 921 (1927) (denying option holder any share in condemnation award), *cert. denied,* 276 U.S. 626, 48 S.Ct. 320, 72 L.Ed. 738 (1928).

Dana's formalistic approach ignores first principles. Privity may exist for the purpose of determining one legal question but not another depending on the circumstances and legal doctrines at issue. Whether there is privity between a party against whom claim preclusion is asserted and a party to prior litigation is a functional inquiry in which the formalities of legal relationships provide clues but not solutions. Some courts have thus held that the inquiry is a factual issue. *Expert Elec. Inc.,* 554 F.2d at 1233; *Aerojet–General Corp. v. Askew,* 511 F.2d at 719 ("The question whether a party's interests in a case are virtually representative of the interests of a nonparty is one of fact for the trial court.").

For purposes of claim preclusion, the requisite privity must be found in the substantial identity of the incentives of the earlier party with those of the party against whom *res judicata* is asserted. The question thus is whether NYPBC had an interest in pursuing a property damage claim against the asbestos manufacturers sufficiently similar to Chase's interest in pursuing the same claim as to have created virtual representation. Absent such an identity of incentives, the application of claim preclusion against Chase would violate concepts of elemental justice and probably due process.

In the instant matter, Chase and NYPBC, as buyer and seller, are no doubt in privity for many purposes. However, the precise issue is whether NYPBC's incentives to pursue its lawsuit were substantially similar to Chase's. The answer is that clearly they were not. The option allowed Chase to purchase the building on certain specified dates. The stipulated purchase price was 110 percent of "Landlord's Costs." That term was defined essentially as the sum of NYPBC's costs in constructing One New York Plaza and the amount of unamortized "Landlord's Additional Costs," defined as most of the costs incurred by NYPBC in running One New York Plaza after the completion of construction. According to the terms of the Second Amendment of Lease, "Landlord's Costs" could not exceed $96,000,000.

An affidavit of an appraiser offered by Chase states:

The total option purchase price was significantly below the market value of the building, even when the asbestos in place is considered. In other words, the then owner of the building had no interest in making capital expenditures because the existence of the option meant that it could only recover its incremental capital expenditures limited to Tenant improvements, only on a straight line basis and not with any appreciation resulting from such investment.

The conclusion reached in the affidavit is that NYPBC had no viable claim for damages against the asbestos manufacturers for diminution of market value. Dana argues that the affidavit "offered only a bald legal conclusion." However, Chase's point that the option price was well below market value even after discovery of the danger from asbestos was not contested by an opposing evidentiary submission. NYPBC thus could not show that the sale price to Chase was lessened by the presence of the asbestos, and its incentive to litigate was thus entirely different from Chase's. Chase is therefore not precluded by NYPBC's abandonment of its litigation.[2]

This is a peculiar case in which to assert claim preclusion for another reason. These actions were closely related and pending before the same district judge. All that was lacking was a formal order of consolidation. Dana is thus not in the position of a litigant who has expended resources litigating in one forum and, after prevailing, now must defend an identical action in another forum. The cases were assigned to the same judge under a local Southern District rule, Local Rule For the Division of Business Among District Judges 15, that is designed to reduce litigants' costs by informally consolidating proceedings in related cases. Discovery or other pre-trial proceedings could thus be deemed to apply to both actions, and Chase's failure to seek formal consolidation under Fed.R.Civ.P. 42, was an understandable, if risky, oversight. Given that the two cases were in the same court and assigned to the

same judge, the use of *res judicata* was something of an ambush.

We therefore reverse.

---

**2.** NYPBC's complaint alleged that it had to undertake an air monitoring program. However, because the cost of abatement and the diminution in value dwarf the expense of air monitor-

ing, we do not believe that the expense of such an air monitoring program affects our analysis of NYPBC's and Chase's divergent incentives.