USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit
 ____________________

No. 96-1574

 BAY STATE HMO MANAGEMENT, INC., ET AL.,
 Plaintiffs, Appellees,

 v.

 TINGLEY SYSTEMS, INC.,
 Defendant, Appellant.

 ____________________

No. 98-2334

 TINGLEY SYSTEMS, INC.,
 Plaintiff, Appellant,

 v.

 CSC CONSULTING, INC.,
 f/k/a CSC PARTNERS, INC.,
 Defendant, Appellee.

 ____________________

 APPEALS FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Reginald C. Lindsay, U.S. District Judge]

 ____________________

 Before

 Torruella, Chief Judge,

 Cyr, Senior Circuit Judge,

 and Pollak, Senior District Judge.

 _____________________ G. Donovan Conwell, Jr., with whom Guillermo A. Pernas, Jr.,
Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Edward P.
Liebensperger, Christa von der Luft and Nutter, , McClennen & Fish,
LLP were on brief, for appellant.
 Michael Arthur Walsh, with whom Eric J. Marandett, Laura M.
Scott and Choate, Hall & Stewart were on brief, for appellee CSC
Consulting, Inc.
 Marc K. Temin, with whom Foley, Hoag & Eliot LLP was on brief,
for appellee Bay State Health Management, Inc., et al.

 ____________________

 June 30, 1999
 ____________________ TORRUELLA, Chief Judge. Appellant Tingley Systems, Inc.
("Tingley") appeals from the district court's orders in two
consolidated cases. Tingley brought suit against appellee Bay
State Health Management, Inc. ("Bay State") and its parent,
appellee Blue Cross and Blue Shield of Massachusetts ("BCBSMA"),
for breach of contract, fraud, misappropriation of trade secrets,
and copyright infringement. After learning of facts that allegedly
implicate appellee CSC Consulting, Inc. ("CSC") as a co-perpetrator
in this conduct, Tingley filed a new complaint against CSC and
consolidated that case with the case against Bay State into "one
proceeding." Tingley and Bay State settled the claims raised in
the first complaint and stipulated to dismiss the first action with
prejudice. Upon motion by CSC, the district court then entered
summary judgment against Tingley in the second action, finding it
barred by the res judicata effect of the dismissal of the first
action. Tingley sought to have the judgment in the first action
modified to preserve the claims of the second action, but the
district court denied Tingley's motion, despite what the district
court termed a "harsh result." Tingley appeals, and we reverse. 
 BACKGROUND
 Bay State is a Boston, Massachusetts-based health care
maintenance organization ("HMO"). Tingley is a Florida corporation
which creates, supports, and distributes computer software for the
HMO industry. In a licensing agreement dated March 14, 1989,
Tingley licensed computer software to Bay State for Bay State's own
internal use. The licensing agreement contained strict
confidentiality requirements and prohibited Bay State from
providing any third party with access to the Tingley software. 
 In 1990, Bay State created three software packages that
allegedly incorporated the file structure and source code of the
Tingley software. The resulting dispute over ownership of these
software packages led Bay State to sue Tingley on June 14, 1993 in
the United States District Court for the District of Massachusetts. 
In response, Tingley immediately sued Bay State in the United
States District Court for the Middle District of Florida. In the
Florida action, Tingley alleged that Bay State breached the
licensing agreement and misappropriated trade secrets by disclosing
Tingley's proprietary material to consultants during the creation
of the software packages. The Florida action was transferred to
the District of Massachusetts, and on December 17, 1993, the
district court consolidated the two cases into Civil Case
No. 97-1574 ("the Bay State cases"). Tingley later amended the
complaint to add BCBSMA as a defendant and to allege causes of
action for copyright infringement and fraud.
 Tingley claims that, during discovery, it learned that 
CSC performed consulting services on one of Bay State's software
package projects. In mid-December of 1994, after several delays
and subpoenas, Tingley obtained several weekly status reports that
were prepared by CSC consultants in connection with the Bay State
software project. According to Tingley, those status reports
revealed that one of the CSC consultants, Vicki Gifford, obtained
the Tingley trade secret file layouts, studied them, and then
loaded them into the software that CSC was creating for Bay State. 
Upon receiving this information, Tingley immediately moved to
extend the discovery cutoff in the Bay State cases, but the motion
was denied.
 On February 9, 1995, Tingley filed a new action against
CSC ("the CSC case"), claiming: (1) misappropriation of trade
secrets; (2) copyright infringement; (3) unfair competition;
(4) tortious interference with the licensing agreement and
Tingley's business relationship with Bay State; and (5) conspiracy
with Bay State to misappropriate Tingley's trade secrets and copy
Tingley's software. On July 11, 1995, upon motion by Tingley,
Magistrate Judge Marianne B. Bowler consolidated the CSC case and
the Bay State cases into "one proceeding." On July 28, 1995,
Tingley filed a second amended complaint in the Bay State cases,
including nine additional allegations of fraud against Bay State. 
The amended complaint captioned the Bay State and CSC cases, but
only amended the claims against Bay State.
 In September of 1995, Tingley and Bay State reached a
settlement in the Bay State cases. A stipulation and order of
dismissal was signed by the parties and entered by the court on
September 11, 1995. The order captioned both the Bay State and CSC
cases, but dismissed only the Bay State cases.
 On October 17, 1995, CSC filed a motion for summary
judgment in the CSC case on the basis of res judicata, claiming
that the September 11, 1995 order of dismissal of the Bay State
cases barred all of Tingley's claims against CSC. Tingley opposed
this motion and alternatively moved for limited relief from
judgment in the Bay State cases. The district court granted CSC's
motion for summary judgment in the CSC case and denied Tingley's
motion for limited relief from judgment in the Bay State cases. 
Tingley now appeals both rulings.
 DISCUSSION
 We turn first to Tingley's appeal of the grant of summary
judgment in favor of CSC. We review a grant of summary judgment on
res judicata grounds de novo. See Porn v. National Grange Mut.
Ins. Co., 93 F.3d 31, 33 (1st Cir. 1996). The applicability of the
doctrine of res judicata is a question of law subject to plenary
review. See id. 
 Under federal law, a final judgment on the merits of an
action precludes the parties from relitigating claims that were
raised or could have been raised in that action. See id. at 34
(citing Allen v. McCurry, 449 U.S. 90, 94 (1980)). For a claim to
be precluded, there must be: (1) a final judgment on the merits in
an earlier action; (2) sufficient identity between the causes of
action asserted in the earlier and later suits; and (3) sufficient
identity between the parties in the two suits. See id. (citing
Apparel Art Int'l, Inc. v. Amertex Enters. Ltd., 48 F.3d 576, 583
(1st Cir. 1995)). CSC and Tingley dispute the first and third
elements, as well as Tingley's claim that CSC consented to allow
Tingley to split its claims, free of res judicata effect. Because
we find that the first element is not satisfied, we do not address
Tingley's other contentions.
 The district court held that the dismissal of the Bay
State cases with prejudice constitutes a "final judgment on the
merits" for res judicata purposes. The district court cited two
First Circuit cases in stating that: (1) cases consolidated for
purposes of convenience and judicial efficiency retain their
separate identities, and (2) final judgments rendered in each
individual action are final judgments. See Tingley Sys., Inc. v.
CSC Consulting, Inc., 919 F. Supp. 48, 51 (D. Mass. 1996) (citing
Fed. Deposit Ins. Corp. v. Caledonia Inv. Corp., 862 F.2d 378, 381
(1st Cir. 1988), and In re Massachusetts Helicopter Airlines, Inc.,
469 F.2d 439, 441-42 (1st Cir. 1972)). 
 Tingley does not dispute the finality of the resolution
of the Bay State cases, but claims that there was no final judgment
on the merits in a separate action because the Bay State cases and
the CSC case should be treated as a single action for res judicata
purposes. If the cases are treated as a single action, the
dismissal of the claims against Bay State would be treated as a
dismissal of all claims against CSC's "co-defendants" and therefore
would have no preclusive effect on the claims against CSC.
 At the outset, we note that there is no doubt that the
Bay State cases and the CSC case are technically separate actions. 
See Johnson v. Manhattan Ry. Co., 289 U.S. 479, 496-97 (1933)
(stating that consolidation is simply a judicial tool which "is
permitted as a matter of convenience and economy in administration,
but does not merge the suits into a single cause, or change the
rights of the parties, or make those who are parties in one suit
parties in another"). Three separate original complaints were
filed, and those three cases were consolidated before the district
court in Massachusetts. However, the essence of consolidation is
that, even though the cases are technically separate actions, they
are treated as a single action for particular purposes. Despite
CSC's representations to the contrary, the Johnson Court did not
state that consolidated actions must always be treated as separate
actions for all purposes. The question here is whether we should
overlook this technical separateness and treat the consolidated
cases as a single action for purposes of determining the res
judicata effect of the settlement of the Bay State cases.
 We agree with Tingley that we are not bound by the
statements in Massachusetts Helicopter and Caledonia Investment in
making this decision. Those cases dealt with the question of
whether an order terminating one of two or more consolidated cases
is appealable absent a certification pursuant to Fed. R. Civ. P.
Rule 54(b). Rule 54(b) provides that, when an action presents more
than one claim for relief or when multiple parties are involved,
the district court may direct the entry of final judgment as to
less than all of the claims or parties -- and therefore allow a
separate appeal -- if it finds that there is no just reason for
delay. See Fed. R. Civ. P. 54(b). In Massachusetts Helicopter, we
held that consolidated cases retain their separateness for purposes
of appeal and therefore the district court need not issue such a
Rule 54(b) certification to allow an appeal from the termination of
one of the consolidated cases. See Massachusetts Helicopter, 469
F.2d at 441-42. We affirmed that principle in Caledonia
Investment. See 862 F.2d at 381.
 The question presented in Massachusetts Helicopter bears
little on the question of whether the termination of one of the
consolidated cases should preclude further proceedings in the
remaining case or cases. The idea that consolidated cases maintain
their separateness for purposes of determining their appealability
is not inconsistent with treating those consolidated cases as a
single action for res judicata purposes. The fact that certain
claims are separate enough to be appealed separately does not mean
that the claims are separate enough to preclude all other similar
claims on res judicata grounds. For example, if a district court
dismisses claims against one of several co-defendants in a
particular non-consolidated case, the court may certify that
dismissal as an immediately and separately appealable final
judgment. See Fed. R. Civ. P. 54(b). Yet there is no suggestion
that the court's certification of the appealability (and therefore
the separateness) of this portion of the case somehow forever
precludes further litigation of the rest of the case. Therefore,
while Massachusetts Helicopter provides the rule of this circuit
regarding the separateness of consolidated cases for the one
purpose of appeal, it does not bar us from accepting Tingley's
invitation to treat the Bay State cases and the CSC case as a
single action for res judicata purposes.
 Tingley cites opinions of other courts that it claims
have addressed the separateness issue in the res judicata context.
While most miss the mark, one is at least marginally helpful to
Tingley. In Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d
343, 347 (2d Cir. 1995), the Second Circuit faced a situation in
which two closely related actions were pending before the same
judge. The plaintiff in one of the actions abandoned its claims
and stipulated to a dismissal of its claims with prejudice. The
district court then granted summary judgment in the other action on
res judicata grounds, finding the plaintiffs to be in privity. The
Second Circuit reversed, finding that the plaintiffs were not in
privity because the plaintiff in the abandoned case had different
incentives than the plaintiff who remained. See id. at 346-47. In
closing, the court commented that it was a "peculiar case in which
to assert claim preclusion for another reason." Id. at 347. The
court noted that the closely related cases were pending before the
same judge, although there was no formal order of consolidation. 
See id. The court stated that, therefore, the defendant was not in
the position of having litigated in one forum and then being forced
to defend an identical action in another forum. See id. The court
then described the use of res judicata as "something of an ambush,"
because the actions proceeded together absent only a formal
consolidation order. Id. However, the court stopped short of
explicitly declaring that this constituted an independent ground
for reversing the district court's application of res judicata.
 CSC responds by citing Robinson v. Worthington, 544
F. Supp. 949, 952 (M.D. Ala. 1982), in which a district court
opined that, even if two actions were to be consolidated before the
same court, the separate identities of the two actions would
remain, and final judgment in one action might bar the second
action on res judicata grounds. See id. We note first that the
cases in Robinson had not actually been consolidated, so the
court's statement regarding the potential effects of consolidation
was merely dicta. Nevertheless, the district court reached its
conclusion after citing authority for the principle that
consolidation does not merge two actions into a single case. See
id. However, this analysis ignores the fact that consolidated
actions are treated as a single action for some purposes, such as
discovery or trial. The Robinson district court performed no
inquiry into res judicata principles; instead, it simply applied
the technical separateness of consolidated cases in the res
judicata context. Thus, Robinson provides little assistance in
determining whether consolidated actions should be treated as a
single action for res judicata purposes.
 Notwithstanding the paucity of authority cited by the
parties on this question, we believe that the Bay State cases and
the CSC case should be treated as a single action for res judicata
purposes. We can find no circuit opinion in which the first of two
consolidated cases to be resolved was found to have a res judicata
effect on the other. However, we have found a very recent Second
Circuit case, not cited by the parties, in which a plaintiff with
two closely related actions pending before the same district judge
at the same time was spared the potentially punitive res judicata
effect of the entry of judgment in the first action. In Devlin v.
Transportation Communications Int'l Union, No. 98-7237, 1999 WL
203526 (2d Cir. Apr. 13, 1999), the Second Circuit was faced with
a district court decision similar to the one at bar. The
plaintiffs, retirees and former employees of the defendant labor
union, filed an action challenging a $100 charge under their
medical benefits plan. In that action ("Devlin I"), the plaintiffs
alleged claims under the Employee Retirement Income Security Act,
29 U.S.C. 1001 et seq. ("ERISA"), as well as New York anti-
discrimination and contract law. The claims for breach of contract
and age discrimination were quickly dismissed as preempted by
ERISA, but the ERISA claims remained. In the order dismissing the
anti-discrimination claims, the court stated that "[i]f Plaintiffs
have a federal age discrimination claim, they should plead it." 
Rather than amend the complaint, the plaintiffs filed a second
action while the first was still pending. The complaint in the new
action ("Devlin II") alleged a claim under the Age Discrimination
in Employment Act, 29 U.S.C. 621 et seq. ("ADEA"), based on acts
both related to and apart from the medical benefits plan. Devlin
II was then transferred, as a "related case," to the same court in
which Devlin I was pending. Nearly two years later, summary
judgment was entered in favor of defendants on all remaining claims
in Devlin I. Shortly thereafter, the district court dismissed
plaintiffs' medical benefits claim in Devlin II, based on the res
judicata effect of the judgment in Devlin I.
 The Second Circuit vacated the district court's
application of res judicata. See Devlin, 1999 WL 203526 at *9. 
The court noted that both cases were before the same district judge
at the same time and that the judge knew that the cases were
related. See id. at *8. The court also noted that the plaintiffs
did not wait until after the entry of judgment in Devlin I before
filing the related action. See id. The Second Circuit then framed
the question as "whether the appellants should be hoisted with
their own procedural petard for failing to plead the ADEA claim in
Devlin I as the district court instructed." Id. The court
expressed puzzlement as to why the plaintiffs did not plead their
ADEA claims in Devlin I as instructed, but stated that the puzzling
actions should not lead to the dismissal of the ADEA claims on res
judicata grounds, "given the fortuitous circumstance that the same
district judge had both Devlin I and Devlin II on his active docket
at the same time." Id. The court then remanded for a
determination of whether Devlin II should be consolidated with
Devlin I, which was reopened in a companion appeal. See id. at *9. 
 It is possible to limit the holding of the Devlin opinion
by finding that it vacated the application of res judicata based on
the fact that the judgment in Devlin I was reversed and the case
reopened, but we believe that to be an incorrect reading. From the
court's extensive analysis, it is clear that the Second Circuit
found that res judicata was not appropriate in such a situation and
contemplated that consolidation below would cure any future similar
problems. The situation at bar is quite analogous in that the
actions were closely related and pending before the same judge at
the same time. Like the plaintiffs in Devlin, Tingley did not wait
until the termination of the first case to commence the second
case. Like the plaintiffs in Devlin, Tingley could have chosen to
assert its new claims in the existing action, but instead chose to
file a new action. The present situation is even more favorable to
Tingley than was the situation in Devlin because Tingley's cases
were consolidated. Tingley actively sought to bring the case to
the attention of the district court to have it consolidated with
the Bay State cases. As a result, we find, as did the Devlin
court, that res judicata is inapplicable to bar the later-filed
action.
 For other reasons as well, we do not believe that Tingley
should be "hoisted with [its] own procedural petard." Res judicata
is a judge-made doctrine resting on policy considerations, see
Diversified Foods, Inc. v. First Nat'l Bank of Boston, 985 F.2d 27,
31 (1st Cir. 1993), and in this case the policy considerations
militate against the application of res judicata. "The policy
rationale behind res judicata is to 'relieve parties of the cost
and vexation of multiple lawsuits, conserve judicial resources,
and, by preventing inconsistent decisions, encourage reliance on
adjudication.'" Apparel Art Int'l, 48 F.3d at 583 (quoting Allen,
449 U.S. at 94). None of those policy concerns is implicated here. 
First, there was no "cost and vexation of multiple lawsuits." At
the time of the settlement, these cases were proceeding as if one
case had been filed against co-defendants CSC and Bay State. The
continuance of the case against CSC when only Bay State chose to
settle is not the type of cost or vexation with which the res
judicata doctrine is concerned. Second, Tingley's actions did
nothing to waste judicial resources. In asserting its claims
against CSC, it mattered little in terms of judicial efficiency
whether Tingley amended its pending Bay State action or filed a new
action and immediately consolidated them. The cases still
proceeded as if only one case existed. Finally, there was no
concern for inconsistent decisions here because the cases were
consolidated. This was not a situation in which one case was filed
and proceeded to judgment, only to have another case come along
threatening a contrary result. There was no greater risk of
inconsistency here than would have existed if all claims had been
brought by Tingley in one comprehensive complaint. As demonstrated
above, one purpose of the res judicata doctrine is to prevent a
plaintiff from raising claims that should have been raised in an
earlier action. Thus, when a plaintiff consolidates two actions in
order to ensure that all claims will be adjudicated together, it
makes little sense to bar the later-filed claims once the original
claims are settled.
 In addition to these policy concerns, equitable
considerations favor treating the consolidated cases as a single
action for res judicata purposes. We agree with Tingley that, for
all practical purposes, CSC and Bay State were co-defendants in a
single lawsuit. Until the time of the settlement in the Bay State
cases, the court treated the actions as one lawsuit with claims
against multiple defendants. See, e.g., July 17, 1995 Transcript,
at 43 (magistrate's statement that "this is consolidated" and that
"[i]t's one big case in the eyes of the Court"). The only
difference between the present situation and a single lawsuit with
multiple claims is that Tingley chose to list its causes of action
against CSC in a new complaint, rather than in an amended complaint
in the Bay State cases. Tingley could easily have done the latter
if it had known that it risked res judicata preclusion, but
Tingley's July 28, 1995 second amended complaint instead amended
only the claims against Bay State. Equity demands that we not
allow such a draconian result to turn on this procedural quirk.
 There are accusations that Tingley filed the new
complaint in order to avoid discovery deadlines in the Bay State
cases, but even if those accusations are true, we do not believe
that total preclusion of Tingley's claims against CSC is the proper
punishment, if any punishment is appropriate. Tingley found out
about CSC's involvement in the alleged wrongdoing very late in
discovery in its case against Bay State. According to CSC and the
district court, Tingley's alternatives were: (1) to amend its Bay
State complaint to add claims against CSC, but proceed without
discovery on those claims, or (2) to file a new action against CSC
that would be precluded if Bay State chose to settle. Forcing
Tingley to choose between those alternatives is not equitable, when
neither alternative gave Tingley the opportunity to fully
investigate and litigate its newly-discovered claims against CSC. 
 In sum, we are persuaded by the Second Circuit's decision
in Devlin, the policy concerns surrounding the res judicata
doctrine, and equitable considerations that, at least in the
limited circumstances presented here, the consolidated cases should
have been treated as a single action for res judicata purposes.
Consequently, the first element of the res judicata standard is not
satisfied. There was no final judgment on the merits in an earlier
action; there was only a final judgment on a portion of the
aggregate case. Therefore, the application of res judicata in this
case was inappropriate. We need proceed no further.
 CONCLUSION
 Based on the foregoing, the district court's entry of
summary judgment in favor of CSC on Tingley's claims against it is
REVERSED, and the CSC case is REMANDED to the district court for
further proceedings. We DISMISS as moot Tingley's appeal from the
district court's denial of its motion for relief from judgment in 
the Bay State cases.