13-815-cv
Carter v. Incorporated Village of Ocean Beach

**UNITED STATES COURT OF APPEALS**

**FOR THE SECOND CIRCUIT**

August Term, 2013

(Argued: April 11, 2014     Decided: July 21, 2014)

Docket No. 13-815-cv

- - - - - - - - - - - - - - - - - -x

EDWARD CARTER, FRANK FIORILLO, KEVIN
LAMM, JOSEPH NOFI, THOMAS SNYDER,

Plaintiffs-Appellants,

- v.-

INCORPORATED VILLAGE OF OCEAN BEACH;
JOSEPH C. LOEFFLER, JR., Mayor,
individually and in his official
capacity; NATALIE K. ROGERS, Former
Mayor, individually and in her official capacity;
OCEAN BEACH POLICE DEPARTMENT; GEORGE B.
HESSE, Acting Deputy Police Chief, individually and
in his official capacity,

Defendants,

SUFFOLK COUNTY; SUFFOLK COUNTY POLICE
DEPARTMENT; SUFFOLK COUNTY DEPARTMENT
OF CIVIL SERVICE; ALISON SANCHEZ,

individually and in her official capacity,

Defendants-Appellees.[*]

- - - - - - - - - - - - - - - - - - -x

Before:           JACOBS, CALABRESI, and LIVINGSTON, <u>Circuit Judges</u>.

Plaintiffs appeal from an order of the United States District Court for the Eastern District of New York (Feuerstein, <u>J.</u>), granting attorney's fees and costs to the Defendants-Appellees pursuant to Federal Rule of Civil Procedure 54(d) and 42 U.S.C. § 1988(b).  Plaintiffs argue that (1) their claims were not frivolous; (2) they should not be liable for fees and costs associated with voluntarily dismissed claims, state law claims, and claims not enumerated in § 1988; and (3) the district court incorrectly calculated the fees award.  We affirm.

                                        DOUGLAS HOLDEN WIGDOR, Wigdor LLP, New York, NY, <u>for Plaintiffs-Appellants</u>.

                                        ARLENE S. ZWILLING, Assistant County Attorney, <u>for</u> Dennis M. Brown, Suffolk County Attorney, Hauppauge, NY, <u>for Defendants-Appellees</u>.

---

[*] The Clerk of Court is respectfully directed to amend the official caption in this case to conform with the caption above.

DENNIS JACOBS, <u>Circuit Judge</u>:

Plaintiffs appeal from an order of the United States District Court for the Eastern District of New York (Feuerstein, <u>J.</u>), granting attorney's fees and costs to the Defendants-Appellees pursuant to Federal Rule of Civil Procedure 54(d) and 42 U.S.C. § 1988(b). Plaintiffs argue that (1) their claims were not frivolous; (2) they should not be liable for fees and costs associated with voluntarily dismissed claims, state law claims, and claims not enumerated in § 1988; and (3) the district court incorrectly calculated the fee award. We affirm.

Plaintiffs, five former seasonal and part-time police officers of the Incorporated Village of Ocean Beach ("Village"), pursued a variety of wrongful termination and defamation claims against (1) the Village, its current and former mayors, the Village police department ("OBPD"), and the acting OBPD deputy police chief (collectively, the "Village Defendants"); and (2) Suffolk County ("County"), the County Police Department, the County Department of Civil Service, and Alison Sanchez, a mid-level County Department of Civil Service employee (collectively, the "County Defendants"). The district court granted summary judgment to all Defendants and, after this Court affirmed, awarded attorney's fees and costs to the County Defendants only. This appeal followed.

3

As the district court recognized, Plaintiffs' claims against the County Defendants were frivolous from the outset, warranting an award of costs and fees pursuant to Federal Rule of Civil Procedure 54 and 42 U.S.C. § 1988. The County Defendants, who did not employ or supervise Plaintiffs, had no meaningful role in any alleged wrongs.

Plaintiffs argue that they should not be liable for fees and costs associated with claims that, frivolous or not, were voluntarily dismissed before summary judgment; or claims over which the district court declined to exercise supplemental jurisdiction; or claims that are not enumerated in § 1988.

**I**

Plaintiffs were employed as OBPD police officers on a seasonal or part-time basis between 2002 and 2006. They had complained to superiors about George Hesse, an OBPD sergeant who allegedly encouraged on-the-job drinking and other unprofessional behaviors. Hesse was eventually designated acting police chief, though Plaintiffs allege that he was never properly certified for the position under New York Civil Service Law. Soon after his promotion, on the eve of the summer 2006 season, Hesse told Plaintiffs that they would not be

4

invited back to work. He allegedly told other officers that Plaintiffs were "rats," made crude comments about them on an Internet blog frequented by Village officers and residents, and gave negative references to potential employers.

Plaintiffs linked the County Defendants to this local squabble through Alison Sanchez, a personnel analyst in the County's Civil Service Department, which is generally in charge of administering civil service examinations and monitoring municipal compliance with the Civil Service Law. However, that Department has no power to hire, discipline, or fire police officers of individual municipalities, and no power to require municipalities to do any of these things. The Department may only inform and advise the municipalities about failures to meet civil service requirements. Sanchez was a mid-level employee in the Department: her work was subject to three levels of supervisory review.

In April 2006, three of the Plaintiffs met with Sanchez to discuss the Village's decision not to rehire them. Plaintiffs allege that Sanchez was biased by her purported sexual relationship with Hesse, that she defended his decision to terminate their employment, and that she relayed the substance of the conversation to Hesse despite a promise to keep it confidential. After Plaintiffs' termination, they or their supporters (or both) posted complaints about Hesse on

5

an Internet blog frequented by OBPD officers, to which Sanchez allegedly responded (anonymously), telling the posters to stop complaining and labeling their "revenge posting" as "crap." See J.A. 1967-69, 2006.

Plaintiffs brought suit in March 2007. The complaint asserted myriad claims, largely undifferentiated as between the various Village Defendants and County Defendants, including (in no particular order): First Amendment retaliation; deprivation without procedural due process of property and liberty interests in "[Plaintiffs'] employment with the OBPD, their reputation, and their status"; conspiracy to infringe state and federal constitutional rights; equal protection; improper termination under New York Civil Service Law; improper retaliation under New York Labor Law; defamation per se; termination in violation of public state policy; negligent retention of an unfit employee; racketeering; and tortious interference with a prospective business relationship. See Compl. ¶¶ 116-192.

Plaintiffs later withdrew their equal protection, racketeering, and New York Labor Law claims. See Carter v. Inc. Vill. of Ocean Beach, 693 F. Supp. 2d 203, 207 n.2 (E.D.N.Y. 2010). In February 2010, after motions for summary judgment had been briefed--and only thirteen days before jury selection was

slated to begin--Plaintiffs withdrew many other claims, leaving claims against the Village, Hesse, the County, and Sanchez, premised on theories of First Amendment retaliation, deprivation of procedural due process, improper termination under New York Civil Service Law, defamation per se, and negligent retention of an unfit employee. See J.A. 6027-28.

On February 19, 2010, a few days before trial was set to start, the district court granted summary judgment in favor of all Defendants. See 693 F. Supp. 2d at 216. The court explained that the First Amendment retaliation claims were barred by Weintraub v. Board of Education, 593 F.3d 196 (2d Cir. 2010), decided about three weeks prior, because all of Plaintiffs' complaints were made pursuant only to their official duties and were therefore constitutionally unprotected. See 693 F. Supp. 2d at 210-12. The procedural due process claims were dismissed because (1) the breaks in Plaintiffs' employment defeated any property right under New York Civil Service Law; and (2) the availability of a meaningful post-deprivation state law remedy defeated any liberty-based, "stigma-plus" claim. See id. at 212-16. The court declined to exercise supplemental jurisdiction over the state law claims. Id. at 216.

In March 2011, this Court affirmed. See Carter v. Inc. Vill. of Ocean Beach,

7

415 F. App'x 290, 292-94 (2d Cir. 2011) (summary order). Meanwhile, Plaintiffs brought their state law claims in state court, which dismissed all claims against the County Defendants at the pleadings stage. See Carter v. Inc. Vill. of Ocean Beach, No. 07 Civ. 1215 (SJF)(ETB), 2013 WL 816257, at *2 (E.D.N.Y. Mar. 4, 2013).

Defendants subsequently moved for attorney's fees and costs in the federal action. In March 2013, Judge Feuerstein denied fees and costs to the Village Defendants because they had not prevailed on the state law claims, which were as yet live in state court. See id. at *1-4. The County Defendants, however, "ultimately prevailed upon all of plaintiffs' claims against them, i.e., plaintiffs voluntarily dismissed some of the claims, summary judgment was granted dismissing the federal claims that were not voluntarily dismissed and plaintiffs' state law claims against the County defendants . . . were dismissed at the pleadings stage in the state court." Id. at *2. Moreover, "all of plaintiffs' claims against the County defendants, who did not employ plaintiffs, or have any legal authority to hire, retain, fire or control employees of the Village or OBPD, were frivolous from the outset of this litigation." Id. at *4.

Fees and costs were awarded to the County Defendants. The time claimed by the County Attorneys' Office was discounted by a third because "some of the

8

hours expended appear[ed] redundant, duplicative or unnecessary." Id. at *5-7.

An hourly rate of $150 was found to be consistent with prevailing local rates. Id.

The total fee award was $63,990.00. Id. This appeal followed.

**II**

As a general matter, "costs--other than attorney's fees--should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). The Rule "codifies a venerable presumption that prevailing parties are entitled to costs." Marx v. Gen. Revenue Corp., 133 S. Ct. 1166, 1172 (2013).

Though Rule 54(d)(1) excludes attorney's fees from costs presumed to be recoverable by the prevailing party, "[i]n any action or proceeding to enforce a provision of . . . [42 U.S.C. §§] 1983, 1985, and 1986 . . ., the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." 42 U.S.C. § 1988(b).

A party who "secure[s] a judgment on the merits or a court-ordered consent decree" is a "prevailing party"; but a "voluntary change in the [other party's] conduct" is not enough. Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598, 600 (2001).

9

Under fee-shifting statutes such as § 1988,[1] "a prevailing *plaintiff* ordinarily is to be awarded attorney's fees in all but special circumstances." Christiansburg Garment Co. v. EEOC, 434 U.S. 412, 417 (1978). By contrast, "a district court may in its discretion award attorney's fees to a prevailing *defendant*" only "upon a finding that the plaintiff's action was *frivolous, unreasonable, or without foundation*, even though not [necessarily] brought in subjective bad faith." Id. at 421 (emphases added).

If a "plaintiff assert[s] both frivolous and non-frivolous claims," then a court may grant to a defendant only those fees "that the defendant would not have incurred but for the frivolous claims." Fox v. Vice, 131 S. Ct. 2205, 2211 (2011).

## III

"We review a district court's award of attorneys' fees under § 1988 for abuse of discretion, mindful that abuse of discretion--already one of the most deferential standards of review--takes on special significance when reviewing fee

---

[1] "Numerous federal statutes allow courts to award attorney's fees and costs to the 'prevailing party.'" Buckhannon, 532 U.S. at 600. These various "fee-shifting provisions" are to be interpreted consistently. Id. at 603 n.4.

decisions because the district court, which is intimately familiar with the nuances of the case, is in a far better position to make such decisions than is an appellate court, which must work from a cold record." Lore v. City of Syracuse, 670 F.3d 127, 175 (2d Cir. 2012) (citations, internal quotation marks, and brackets omitted). Similarly, the decision to award costs under Rule 54(d)(1) "is committed to the sound discretion of the district court, and is accordingly reviewed for abuse of discretion." ARP Films, Inc. v. Marvel Entm't Grp., Inc., 952 F.2d 643, 651 (2d Cir. 1991).

However, "[w]hether a litigant is a 'prevailing party'" under a fee-shifting provision "constitutes a question of law warranting de novo review." Dattner v. Conagra Foods, Inc., 458 F.3d 98, 100 (2d Cir. 2006) (per curiam).

**IV**

As the district court recognized, all of Plaintiffs' claims against the County Defendants were, from the beginning, "frivolous, unreasonable, or without foundation." Christiansburg Garment, 434 U.S. at 421.[2]

---

[2] The district court emphasized that it had expressed doubts about the claims against the County Defendants "during a pretrial conference early in the litigation." Carter, 2013 WL 816257, at *4. We hesitate to assign much

11

Allegations against all four County Defendants center on Sanchez. But the factual allegations regarding her role are immaterial to Plaintiffs' legal theories: *After* Plaintiffs had already been terminated by the Village Defendants, Sanchez allegedly (1) listened to Plaintiffs' complaints, defended Hesse, and told him about the conversation; and (2) posted on an Internet board, without naming anyone, that the posts complaining about Hesse were "revenge posting" and "crap." This is not the stuff of litigation. All of Plaintiffs' claims center around two basic wrongs, improper termination and (to a lesser degree) defamation; Sanchez had no meaningful role in either.

None of the municipal liability claims lie against the County, because Plaintiffs made no effort to establish: (1) that the County's failure to train its employees amounted to deliberate indifference to constitutional rights, see City of Canton v. Harris, 489 U.S. 378, 392 (1989); (2) that there was a persistent and widespread unconstitutional governmental policy or custom, see Monell v. Dep't

importance to such warnings, given the common technique of fostering settlement by reminding parties of their vulnerabilities, not to mention the risk that such warning may coerce a party to withdraw even a meritorious claim if it might result in the award of attorney's fees to the opposing party. In this case, however, the district court's statement confirms that Plaintiffs' claims against the County Defendants were unmistakably frivolous throughout the entire course of litigation.

12

of Soc. Servs., 436 U.S. 658, 691 (1978); or (3) that a County policymaker approved any constitutional violation, see Roe v. City of Waterbury, 542 F.3d 31, 37 (2d Cir. 2008).

As for the constitutional conspiracy theories, Plaintiffs themselves dismissed these claims voluntarily before summary judgment. No wonder they did: Sanchez and the County had no appreciable role in any alleged conspiracy to terminate or defame Plaintiffs. Moreover, "[42 U.S.C.] §§ 1985 and 1986 require some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action," Reynolds v. Barrett, 685 F.3d 193, 201-02 (2d Cir. 2012) (footnotes and internal quotation marks omitted), and there is no hint of such animus here.

Plaintiffs argue that the substance and complexity of their cause is conceded in a January 2010 letter from the County Defendants to the district court, joining the Village Defendants' request to postpone trial pending decision on the summary judgment motions:

> Given that there are a significant number of complex legal issues raised upon the summary judgment motions which must necessarily be decided in plaintiff's favor for this case to go to the jury, including the involved question of whether plaintiffs had any constitutionally protected interest in their employment, we believe

that the resources of counsel and the Court will best be served by the motions being disposed of prior to trial.

J.A. 5825. The letter adverted to one legal "complexity": whether Plaintiffs could cobble together their part-time and seasonal jobs to accumulate five years of continuous employment for purposes of establishing a protected property interest. The only complexity in the issues regarding the County Defendants' involvement (or lack thereof) arose from the jumbled pleading. In any event, a party's acknowledgment of complexity cannot bind the district court (or us) to find complexity, let alone merit.

**V**

Plaintiffs argue that, frivolousness aside, they should not be held accountable for fees that would have been incurred by the County Defendants anyway in defending against (A) voluntarily dismissed claims; (B) state law claims; and (C) claims not enumerated in § 1988. We address each category in turn.

14

**A**

Plaintiffs rely on <u>Nemeroff v. Abelson</u>, 620 F.2d 339, 350-51 (2d Cir. 1980) (<u>per curiam</u>), which observed that "generally the defendant is not considered the prevailing party when, as here, there is a voluntary dismissal of the action by the plaintiff with prejudice."[3]  Plaintiffs argue that they therefore cannot be held liable for any fees and costs that the County Defendants would have incurred anyway to defend against the claims that were dismissed voluntarily.

But <u>Nemeroff</u>'s general statement of fee-shifting law was dictum because the order of dismissal in that case expressly reserved defendants' right to move for costs.  <u>See</u> 620 F.2d at 350.  The court had no occasion to apply the rule it posited.  Moreover, the only authority <u>Nemeroff</u> cited, <u>Mobile Power Enterprises, Inc. v. Power Vac, Inc.</u>, 496 F.2d 1311, 1312 (10th Cir. 1974), has since been overruled by a unanimous <u>en banc</u> Tenth Circuit, which explained that <u>Mobile Power</u> was illogical, a misreading of both the Federal Rules and earlier precedent,

---

[3] This "general[]" principle was also cited in <u>Colombrito v. Kelly</u>, 764 F.2d 122, 130 (2d Cir. 1985).  A prior panel had issued a writ of prohibition directing the district court to dismiss the case, but without prejudice to a future § 1988 fee-shifting application so that the dismissal was treated as though defendants had prevailed.  The <u>Colombrito</u> panel explained that the prior panel had done so because the <u>Nemeroff</u> dicta might otherwise have prevented the defendants from seeking fees.  <u>Id.</u>

15

and contrary to the decisions of most other courts.  See Cantrell v. Int'l Bhd. of Elec. Workers, 69 F.3d 456, 456 (10th Cir. 1995) (en banc).

Nemeroff is also in tension with subsequent case law from the Supreme Court.  In Buckhannon, the Supreme Court held that, to "prevail[]" for purposes of attorney's fees, a party (the plaintiff in that case) must have gained through the litigation a "material alteration of the legal relationship of the parties."  532 U.S. at 604 (internal quotation marks omitted).  A voluntary dismissal of an action with prejudice works such alteration, because it constitutes "an adjudication on the merits for purposes of res judicata," Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 345 (2d Cir. 1995), and any action so dismissed could not be brought again.  Because the Nemeroff dictum suggests to the contrary, and has no redeeming justification, we reject it.

Unencumbered by Nemeroff, we consider whether the voluntary dismissal of some claims, coupled with the grant of summary judgment dismissing the claims that remain, makes the County Defendants prevailing parties.  The answer here is obvious: the victory for the County Defendants was total.  The merits of this case were adjudicated by the district court, this Court summarily affirmed, and no petition for certiorari was filed.  All the claims arose from the same

16

transaction or occurrence. Plaintiffs are barred by res judicata from relitigating any of them. Because Plaintiffs cannot refile, the judgment has materially altered the parties' legal relationship. See Buckhannon, 532 U.S. at 604. The County Defendants have, in every sense of the word, "prevail[ed]" as to all claims, whether dismissed or otherwise.

**B**

As to their state law claims, Plaintiffs argue that they are not liable for fees and costs because the district court declined to exercise supplemental jurisdiction. Other courts have ruled that a declination to exercise supplemental jurisdiction is insufficient to confer prevailing party status on a defendant, since those claims could later be refiled. See Avery v. First Resolution Mgmt. Corp., 568 F.3d 1018, 1024 (9th Cir. 2009). In the circumstances of this case, however, a state court had dismissed the state law claims on the pleadings before the district court resolved the motion for attorney's fees in the federal case. Accordingly, there was no chance that these claims would be refiled, and the defendants are properly considered prevailing parties on these claims.

Moreover, the state law claims against the County Defendants were frivolous for the same reason that the federal claims were frivolous: the County

17

Defendants had nothing to do with the alleged improper termination and the defamation underlying Plaintiffs' complaint.

Plaintiffs argue that even if the state law claims were frivolous, fees cannot be imposed without adjudication of these claims by the federal court. This argument is implicitly at odds with <u>Fox</u>, in which the district court granted summary judgment on the federal claims (which were frivolous) and remanded the state claims (which were not). 131 S. Ct. at 2211-12. The issue was how to allocate between work associated with the former and work associated with the latter; the Supreme Court held that plaintiffs could be liable only for costs and fees "that the defendant would not have incurred but for the frivolous claims." <u>Id.</u> at 2211.

If Plaintiffs were correct, there would have been no need in <u>Fox</u> to draw a line between claims that were frivolous and those that were not: claims remanded to state court would *never* be subject to fee-shifting.

**C**

Plaintiffs contend that § 1988 contemplates only violations of federal civil rights statutes (<u>e.g.</u>, §§ 1983, 1985, and 1986) and that no fees should have been awarded as to all their other assorted claims.

18

Once again, this argument runs counter to <u>Fox</u>. The state claims in <u>Fox</u> were not specifically listed in § 1988. Under Plaintiffs' logic, the Court would have disposed of the appeal by explaining that fees associated with those claims were unavailable, without reference to frivolousness.

More importantly, Plaintiffs' argument distorts the text of § 1988, which provides that "[i]n *any action or proceeding* to enforce a" federal civil rights provision, "the prevailing party" may be entitled to fees. Plaintiffs' action sought to enforce (<u>inter alia</u>) federal civil rights provisions, and the County Defendants prevailed.

**VI**

Plaintiffs dispute the fee calculation on procedural and substantive grounds.

**A**

Plaintiffs protest that they were improperly denied an opportunity to challenge the County Defendants' billing records. We disagree.

The Village Defendants and the County Defendants moved for fees and costs in separate submissions. Only the County Defendants submitted billing

19

records; the Village defendants suggested that the court first decide the issue of liability for fees and take submissions afterward on the value of services.  See Fed. R. Civ. P. 54(d)(2)(C) ("The court may decide issues of liability for fees before receiving submissions on the value of services.").

Plaintiffs responded to both motions in a single omnibus submission, and agreed with the Village Defendants that the court should decide liability before calculating fees.  Plaintiffs thereby elected not to respond to the County Defendants' fee calculations, presumably hoping that they would prevail on liability, or that further briefing would be sought.  The district court, however, proceeded to grant fees to the County Defendants and used their records as a starting point for calculating the proper award.  The court did not give Plaintiffs a second opportunity to challenge the County Defendants' records.

There was nothing improper about this.  Rule 54(d)(2)(C) is permissive; the court "may" decide liability for fees first, but need not.  Plaintiffs left unanswered the County Defendants' submission on the fee calculation, and that choice is binding.

**B**

Plaintiffs also argue that the district court improperly calculated the fee award.

The district court recognized that "some of the hours expended" by the County Attorney's Office "appear redundant, duplicative or unnecessary." Carter, 2013 WL 816257, at *5. The court accordingly scrutinized the billing records closely. The one-third discount was a reasonable response to the flaws identified in those records. See, e.g., Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) ("[W]e see no abuse of discretion in . . . the 20% reduction for vagueness, inconsistencies, and other deficiencies in the billing records."); U.S. Football League v. Nat'l Football League, 887 F.2d 408, 411, 415 (2d Cir. 1989) (affirming reduction for vagueness because, "[a]s the amount of an award is within the discretion of the district court, so is the amount of any reduction").

Fox, the Supreme Court's latest word on § 1988 fee-shifting, reiterates that "[a] trial court has wide discretion" in deciding an appropriate fee award. 131 S. Ct. at 2211. The Court explained:

> We emphasize, as we have before, that the determination of fees
> should not result in a second major litigation. The fee applicant
> (whether a plaintiff or a defendant) must, of course, submit

appropriate documentation to meet the burden of establishing entitlement to an award. But trial courts need not, and indeed should not, become green-eyeshade accountants. The essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time. And appellate courts must give substantial deference to these determinations, in light of the district court's superior understanding of the litigation. We can hardly think of a sphere of judicial decisionmaking in which appellate micromanagement has less to recommend it.

Id. at 2216 (citations and internal quotation marks omitted).

Plaintiffs' claims were frivolous from the outset, and required the County Defendants to litigate continuously (at taxpayer expense) since March 2007. The award was within the district court's discretion.

## CONCLUSION

For the foregoing reasons, the order of the district court is affirmed.