Rabbi Yitzchok LeBLANC–STERNBERG, Chanie LeBlanc–Sternberg, Fred Walfish, Lewis Kamman, Park Avenue Synagogue, Inc., Plaintiffs–Appellees,

v.

Robert FLETCHER, Marianne Cucolo, and John C. Layne, Individually and in their capacity as Trustees of the Village of Airmont, Maureen Kendrick, Individually and in her capacity as Mayor of the Village of Civic Association, The Village of Airmont, The Town of Ramapo, and Herbert Reisman, Individually and in his capacity as Ramapo Town Supervisor, Defendants.

Nicholas Vertullo, Individually and in his capacity as Trustee of the Village of Airmont, Defendant–Appellant.

No. 96–6289.

United States Court of Appeals, Second Circuit.

Argued Oct. 9, 1997.
Decided May 13, 1998.

Reuben S. Koolyk, New York City, (Arnold & Porter, New York City, Kevin W. Goering, Brian C. Dunning, Coudert Brothers, New York City, Craig L. Parshall, Fredricksburg, Virginia, Anne–Marie Arriel, The Rutherford Institute, Charlottesville, Virginia, on the brief), for Plaintiffs–Appellees.

Edmund C. Grainger, III, White Plains, New York (Charles A. Goldberger, Patricia W. Gurahian, McCullough, Goldberger & Staudt, White Plains, New York, on the brief), for Defendant–Appellant.

Before KEARSE and CABRANES, Circuit Judges, and CHIN, District Judge*.

KEARSE, Circuit Judge:

Defendant Nicholas Vertullo, a former trustee of the Village of Airmont, New York ("Airmont" or the "Village"), whom a jury found not liable in connection with the Village's violations of plaintiffs' civil rights, appeals from so much of an order of the United States District Court for the Southern District of New York, Gerard L. Goettel, *Judge,* as denied his motion under 42 U.S.C. § 1988(b) for an award of attorneys' fees against plaintiffs. The district court, although stating its view that the action against Vertullo was unreasonable and

---

* Honorable Denny Chin, of the United States District Court for the Southern District of New York, sitting by designation.

groundless, denied the motion on the ground that that view was untenable in light of this Court's decision in *LeBlanc–Sternberg v. Fletcher,* 67 F.3d 412 (2d Cir.1995) ("*Le-Blanc–Sternberg I* "), *cert. denied,* 518 U.S. 1017, 116 S.Ct. 2546, 135 L.Ed.2d 1067 (1996), which reversed the district court's ruling that there was no possible basis for the jury's verdict against the Village. Vertullo contends principally that the denial of fees was an abuse of discretion because the litigation against him was unreasonable and groundless. Finding no merit in his contentions, we affirm.

## I. BACKGROUND

This matter, an action by plaintiffs Yitzchok LeBlanc–Sternberg, the rabbi of plaintiff Park Avenue Synagogue, Inc., *et al.,* returns to us following appeals in which we, *inter alia,* reinstated a jury verdict in favor of plaintiffs against the Village for discrimination, and conspiracy to discriminate, against plaintiffs on the basis of their Orthodox Jewish religion, *see LeBlanc–Sternberg I,* 67 F.3d 412, reversed the district court's entry of judgment in favor of the Village in a parallel action brought by the United States, *see id.,* and upheld, following proceedings on remand, the district court's granting of injunctive relief prohibiting the Village from engaging in further discrimination on the basis of religion and directing that certain amendments be made to the Village's zoning code, *see LeBlanc–Sternberg v. Fletcher,* 104 F.3d 355, 1996 WL 699648 (2d Cir. Dec.6, 1996) (unpublished disposition) ("*LeBlanc–Sternberg II* "), *cert. denied,* —— U.S. ——, 117 S.Ct. 2431, 138 L.Ed.2d 193 (1997). The factual background of the litigation and the liability rulings is set forth in detail in *Le-Blanc–Sternberg I,* and in the opinion we issue today in a companion appeal, *LeBlanc–Sternberg v. Fletcher,* No. 96–6287, 1998 WL 248641 (2d Cir.1998) ("*LeBlanc–Sternberg III* "). Familiarity with *LeBlanc–Sternberg I* and *LeBlanc–Sternberg III* is assumed.

### A. *The Events Leading to the Present Action*

The evidence at trial included the following. In the mid–1980s, some residents of. Airmont, then an unincorporated area within the Town of Ramapo, New York (the "Town"), objected to Town zoning provisions accommodating the Town's then-increasing population of Orthodox and Hasidic Jews. The Town's zoning code, *inter alia,* allowed rabbis, with some restrictions, to use their homes as congregational places of worship ("home synagogues") in order to permit Orthodox and Hasidic Jews to adhere to certain requirements of their religion. Some of the objecting Airmont residents formed defendant Airmont Civic Association, Inc. ("ACA"), which pushed for Airmont's incorporation as a village in order to permit Airmont to adopt its own zoning code designed to exclude Orthodox and Hasidic Jews. *See, e.g., LeBlanc–Sternberg I,* 67 F.3d at 418 (" 'everybody knows ... why [ACA] was formed. What does [ACA] and the proposed village plan to do to keep these Hasid[i]m out?' " (quoting trial testimony describing a 1986 meeting of ACA)).

Defendant Robert Fletcher was ACA's president. Vertullo was a member of ACA and was a close friend and "political ally" of Fletcher. *Id.* at 419. Vertullo became a member of the ACA board following the resignations of several board members who opposed ACA's discriminatory agenda. He was appointed to the board principally because of his view, in "general agreement" with the remaining board members (Trial Transcript at 3534), that home synagogues should be prohibited (*see id.* at 3528–30). While Vertullo was an ACA board member, ACA financed proceedings in state court to block LeBlanc–Sternberg's application to the Town. for permission to maintain a home synagogue. At a public hearing before the Town's planning board on another Orthodox Jewish rabbi's application for a zoning variance, Vertullo read a statement, written by Fletcher and concurred in by Vertullo, in opposition to the variance.

After Airmont residents had voted to incorporate the Village, Fletcher stated at an ACA meeting that " 'the only reason we formed this village is to keep those Jews ... out of here.' " *LeBlanc–Sternberg I,* 67 F.3d at 419. Candidates backed by ACA, including Fletcher and Vertullo, were elected as

the Village's first trustees. In his capacity as Village trustee, Vertullo voted for the Village to finance another state court proceeding in opposition to LeBlanc–Sternberg's application for a home synagogue. He also asked the Village's attorney to bring suit to prevent another Orthodox Jewish rabbi from obtaining a zoning variance. Vertullo voted with the other trustees to appoint the members of the Village's zoning commission, which eventually drafted the Airmont zoning code, whose language could be interpreted to curb the establishment and operation of home synagogues and whose modification was eventually required by the district court's injunction, *see United States v. Village of Airmont,* 925 F.Supp. 160 (S.D.N.Y. 1996), *aff'd, LeBlanc–Sternberg II,* 104 F.3d 355.

## B. *The Adjudication of Plaintiffs' Claims*

Plaintiffs brought the present action against the Village, ACA, and a number of individual defendants, including Fletcher and Vertullo. The complaint alleged, *inter alia,* that Vertullo and the other defendants had conspired, in violation of 42 U.S.C. § 1985(3), to violate plaintiffs' rights under the First Amendment and the Fair Housing Act, 42 U.S.C. § 3601 *et seq.* ("FHA"), by restricting plaintiffs' freedom to worship and excluding them from Airmont.

Vertullo made several attempts, all of them unsuccessful, to have the claims against him summarily dismissed rather than tried. First, he moved to dismiss on the ground that the complaint failed to state a claim against him. The district court denied the motion. The court noted that "[t]he complaint suggests that ACA was originally formed to achieve the individual defendants' discriminatory goals and essentially became an instrument of the conspiracy." *LeBlanc–Sternberg v. Fletcher,* 781 F.Supp. 261, 273 (1991). Citing the individual defendants' active participation in ACA, and ACA's support of those defendants' candidacy for Village office, the district court found that "[a] sufficient connection ... has been alleged between the actions of the individual defendants and the instrument of the conspiracy [ACA] to let the conspiracy allegations

stand." *Id.* Vertullo thereafter moved for summary judgment; the district court declined to grant the motion, permitting the case against him to proceed to trial. At the close of plaintiffs' evidence at trial, Vertullo moved for judgment as a matter of law, contending that the evidence presented against him was insufficient; the court reserved decision and permitted the case to go to the jury.

Vertullo prevailed, however, before the jury. While finding that plaintiffs' rights had been infringed by the Village, which had violated the FHA and had conspired to deny them their rights under the First Amendment, the jury concluded that plaintiffs had not proven their claims against the individual defendants. The district court thus entered judgment in favor of the individual defendants. In addition, the district judge subsequently entered judgment as a matter of law in favor of the Village, based on his perception that the jury's verdicts were inconsistent and on his own view that the evidence provided no possible basis for the jury's verdict against the Village. *See LeBlanc–Sternberg I,* 67 F.3d at 422–24. Plaintiffs appealed, contending, *inter alia,* that the verdicts were not inconsistent, that the evidence was sufficient to support the verdict against the Village, and that there should be a new trial of the claims against Vertullo because of alleged errors in the court's jury instructions. Vertullo cross-appealed, contending that he should have been granted judgment as a matter of law.

Insofar as is pertinent to this appeal, this Court in *LeBlanc–Sternberg I* reversed the judgment entered in favor of the Village, finding that the district judge was not entitled to substitute his own view of the evidence for that of the jury and that the evidence amply supported the jury's verdict against the Village; but we affirmed the judgment in favor of the individual defendants, finding no reversible error in the district court's instructions. Having rejected plaintiffs' request for a new trial of their claims against Vertullo, we dismissed Vertullo's cross-appeal for judgment as a matter of law as moot.

## C. *Vertullo's Request for Attorneys' Fees*

Following the entry of judgment in his favor, Vertullo had moved for an award of attorneys' fees pursuant to 42 U.S.C. § 1988(b). He argued that "there was no evidence offered at trial with respect to any action by VERTULLO other than the fact that VERTULLO read a letter of FLETCHER's at the Planning Board meeting." (Affirmation of Edmund C. Grainger, III dated April 7, 1994, ¶ 13.) He further contended that

> [p]laintiffs and their attorneys certainly knew prior to trial that they did not intent [*sic*] to offer any evidence with respect to VERTULLO. Thus, the continuation of the action against VERTULLO, when Plaintiffs and their counsel knew there was no evidence concerning VERTULLO, was not only harassment, but was clearly frivolous.

(*Id.* ¶ 14.) The district court reserved decision on Vertullo's motion pending resolution of the appeals.

After our decision in *LeBlanc–Sternberg I,* the court denied Vertullo's motion for fees. The court noted that although Vertullo and the other individual defendants had prevailed at trial, a prevailing defendant, unlike a prevailing plaintiff,

> may receive fees under 42 U.S.C. § 1988 only when the Court finds that the action "was frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate it [*sic*] after it clearly became so." *Christiansburg Garment Co. v. Equal Employment Opportunity Comm'n[ ],* 434 U.S. 412, 422, 98 S.Ct. 694, 700–01, 54 L.Ed.2d 648 (1978).

Memorandum Decision dated October 15, 1996, at 11. The court stated its view that "[a]bout the only evidence offered with respect to Vertullo was that he read a letter from Fletcher ... at a Planning Board meeting," *id.* at 5 n. 4, and that the action against Vertullo

> was unreasonable and groundless. However, the plaintiffs' success on appeal diminishes the lustre of these defendants' success. Moreover, it clearly suggests that the appellate court (or at least the panel which remanded the case) would not

approve fees for the prevailing defendants in any event,

*id.* at 11.

This appeal followed.

## II. DISCUSSION

On appeal, Vertullo contends principally that plaintiffs should be ordered to pay his attorneys' fees because the district court stated that the claims against him were "unreasonable and groundless." He argues that that statement constitutes a factual finding that may not be overturned because it is not clearly erroneous, and that the district court was not permitted to deny his request for an award of fees solely on the basis that this Court was likely to reverse such an award. We conclude that Vertullo's characterization of the court's statement as a finding of fact is erroneous; that the district court's characterization of plaintiffs' claims as "unreasonable and groundless" is contradicted by the record; and that Vertullo was not entitled to an award of fees.

In a civil rights action under 42 U.S.C. § 1985(3), the court has discretion to award reasonable attorneys' fees to "the prevailing party." 42 U.S.C. § 1988(b). Under this provision, as interpreted by the Supreme Court, fees are routinely awarded to a prevailing plaintiff who obtains some significant measure of relief, but are not so readily available to a prevailing defendant. *See, e.g., Hughes v. Rowe,* 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980) (per curiam); *Christiansburg Garment Co. v. Equal Employment Opportunity Commission,* 434 U.S. 412, 422, 98 S.Ct. 694, 700–01, 54 L.Ed.2d 648 (1978). As we observed in *American Federation of State, County & Municipal Employees, AFL–CIO v. County of Nassau,* 96 F.3d 644 (2d Cir.1996) ("*AFSCME v. Nassau*"), *cert. denied,* —— U.S. ——, 117 S.Ct. 1107, 137 L.Ed.2d 309 (1997),

> [t]he [*Christiansburg*] Court articulated "two strong equitable considerations" for permitting routinely an award of fees to prevailing plaintiffs that "are wholly absent" when a defendant prevails. [434 U.S. at 418, 98 S.Ct. at 698.] First, "the

plaintiff is the chosen instrument of Congress to vindicate 'a policy that Congress considered of the highest priority.'" *Id.* (quoting *Newman v. Piggie Park Enters.*, 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968)). "Second, when a district court awards counsel fees to a prevailing plaintiff, it is awarding them against a violator of federal law." *Id.* 96 F.3d at 650. Thus, "[t]he fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees" in favor of the defendant. *Hughes v. Rowe*, 449 U.S. at 14, 101 S.Ct. at 178. In order to avoid chilling the initiation and prosecution of meritorious civil rights actions, fees are not to be awarded to a prevailing defendant unless the plaintiff's action was "frivolous, unreasonable, or groundless, or ... the plaintiff continued to litigate after it clearly became so." *Christiansburg*, 434 U.S. at 422, 98 S.Ct. at 700–01; *see Hughes v. Rowe*, 449 U.S. at 14, 101 S.Ct. at 178 ("The plaintiff's action must be meritless in the sense that it is groundless or without foundation.").

Further, the Court has cautioned that, in applying this standard, courts must take care not to "engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation." *Christiansburg*, 434 U.S. at 421–22, 98 S.Ct. at 700. This warning is particularly pertinent to cases involving allegations of conspiracy. Conspiracies are "by their very nature secretive operations that can hardly ever be proven by direct evidence." *Rounseville v. Zahl*, 13 F.3d 625, 632 (2d Cir.1994). Thus, unsuccessful conspiracy claims are not unreasonable merely because they were based principally, or even entirely, on circumstantial evidence. *See id.* Further, as we have often noted in the criminal context, "[o]nce a conspiracy is shown to exist, the evidence sufficient to link another defendant to it need not be overwhelming." *United States v. Amato*, 15 F.3d 230, 235 (2d Cir.1994) (internal quotation marks omitted); *see, e.g., United States v. Radonjich*, 1 F.3d 117, 121 (2d Cir.1993), *cert. denied*, 510 U.S. 1079, 114 S.Ct. 897, 127 L.Ed.2d 89 (1994). If a plaintiff's assertions of conspiracy are frivolous, groundless, or unreasonable, of course, the defendant may properly be awarded attorneys' fees. *See, e.g., AFSCME v. Nassau*, 96 F.3d at 650–51 (discussing cases). "Generally," however, "where evidence is introduced that, if credited, would suffice to support a judgment" in favor of the plaintiff, a fee award to the defendant is "unjustified." *Id.* at 652. "[A] claim is not necessarily frivolous because a witness is disbelieved or an item of evidence is discounted, disproved or disregarded at trial." *Id.*

The determination as to whether a claim was frivolous, unreasonable, or groundless is not a purely factual inquiry. Questions as to what allegations were made and what evidence was presented are questions of fact; but the determination as to whether the claims were frivolous, unreasonable, or groundless requires an evaluation of the allegations and the proof in light of the controlling principles of substantive law. Thus, such a determination is ordinarily reviewed not for clear error but rather for abuse of discretion. *See, e.g., id.* at 653; *see also Denton v. Hernandez*, 504 U.S. 25, 33, 112 S.Ct. 1728, 1733–34, 118 L.Ed.2d 340 (1992) (determination that *in forma pauperis* complaint is frivolous, warranting dismissal pursuant to 28 U.S.C. § 1915, is reviewed for abuse of discretion); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 2460–61, 110 L.Ed.2d 359 (1990) (determination that a court filing is frivolous, warranting the imposition of sanctions pursuant to Fed.R.Civ.P. 11, is reviewed for abuse of discretion).

Certain types of judicial rulings strongly indicate that a plaintiff's claim should not be deemed frivolous, groundless, or unreasonable. For example, a court cannot properly consider a claim to be frivolous on its face if it finds that the plaintiff must be allowed to litigate the claim. *See, e.g., Sussman v. Bank of Israel*, 56 F.3d 450, 457 (2d Cir.) (district court's imposition of sanctions could not be upheld on the ground that the complaint was frivolous in light of that court's ruling that the dismissal of the complaint (a) should be without prejudice, and (b) would be granted only if the defendants ac-

ceded to certain conditions permitting litigation of the claims in another forum), *cert. denied,* 516 U.S. 916, 116 S.Ct. 305, 133 L.Ed.2d 210 (1995). Nor may a claim properly be deemed groundless where the plaintiff has made a sufficient evidentiary showing to forestall summary judgment and has presented sufficient evidence at trial to prevent the entry of judgment against him as a matter of law. In *AFSCME v. Nassau,* for example, we noted that the district court's conclusion, after a bench trial, that a claim was frivolous was in "some tension with" its earlier denials of the defendants' motions to dismiss pursuant to Rule 12(b)(6) and for judgment as a matter of law at the close of the plaintiff's case at trial. 96 F.3d at 653 n. 2. The court's posttrial dismissal of the claim was based on its assessments of credibility and its weighing of the evidence. We noted that the plaintiff's evidence, "if credited, could have supported a judgment in its favor," and hence the claim could not properly be found " 'frivolous, unreasonable or groundless.' " *Id.* at 646. We therefore reversed the court's award of fees to the defendants, concluding that the award was an abuse of discretion.

In the present case, the pertinent prejudgment rulings made by the district court were inconsistent with its eventual conclusion that plaintiffs' claims against Vertullo were groundless and unreasonable. The court had refused to grant Vertullo's motion to dismiss for failure to state a claim on which relief can be granted, his pretrial motion for summary judgment, and his motion at trial for judgment as a matter of law. All of those refusals to dismiss were correct. For example, as the district court itself indicated, it could not properly dismiss the complaint against Vertullo for failure to state a claim because the complaint asserted "[a] sufficient connection ... between the actions of the individual defendants and the instrument of the conspiracy [ACA]" by alleging, *inter alia,* that the individual defendants actively participated in ACA, that ACA supported their candidacy for Village office, and "that ACA was originally formed to achieve the individual defendants' discriminatory goals." *LeBlanc–Sternberg v. Fletcher,* 781 F.Supp. at 273. Further, the evidence at trial was sufficient to establish a prima facie case against Vertullo. First, there was ample evidence that ACA was an organization that "emphasized the need for control over zoning in connection with the desire to keep Orthodox and Hasidic Jews out of the Airmont community," *LeBlanc–Sternberg I,* 67 F.3d at 418, as well as "ample support for the jury's implicit finding that Airmont's zoning code would be interpreted to restrict the use of home synagogues, that the motivation behind the enactment [of that code] was discriminatory animus toward Orthodox and Hasidic Jews, and that Airmont pursued this goal jointly with ACA," *id.* at 431. Second, notwithstanding the district court's view that the only evidence against Vertullo was his reading of a letter written by Fletcher, plaintiffs presented evidence that Vertullo was one of the individuals who governed both ACA and the Village and shared their invidious animus: Vertullo served on ACA's board of directors; he was appointed to that board because he shared the view of Fletcher (and of those board members who had not resigned in disagreement with ACA's focus on exclusionary zoning) that Airmont should not permit home synagogues; as an ACA board member, Vertullo supported ACA's efforts to block plaintiffs' and other Orthodox Jewish rabbis' applications to establish places of worship; with the backing of ACA, Vertullo was elected a Village trustee; in that capacity, he sought to have the Village join ACA in financing legal action against plaintiffs and other Orthodox Jews; and as a Village trustee, Vertullo helped choose the members of the Village zoning commission that would draft the Airmont zoning code designed to prohibit home synagogues. Plaintiffs clearly had a reasonable factual basis for making—and for pursuing through trial—the claim that Vertullo was a participant in the ACA–Village conspiracy that the jury implicitly found existed.

It was, of course, within the province of the jury ultimately to weigh the evidence and to determine what inferences to draw from it. The fact that the jury concluded that plaintiffs had not carried their burden of proof against Vertullo did not, however, in light of the evidence presented, permit the *post hoc*

conclusion that plaintiffs' claims were frivolous, groundless, or unreasonable. We conclude that it was proper to deny Vertullo's request for an award of attorneys' fees.

## CONCLUSION

We have considered all of Vertullo's contentions on this appeal and have found them to be without merit. So much of the district court's order as is challenged on this appeal, denying Vertullo's motion for attorneys' fees, is affirmed.