**Kwame OPOKU, Plaintiff,**

**v.**

**The COUNTY OF SUFFOLK, Thomas Spota, The Suffolk County District Attorney's Office, and "John Does" Persons whose names are currently unknown, Defendants.**

No. 14–CV–2726 (JFB)(GRB).

United States District Court,
E.D. New York.

Signed Aug. 21, 2015.

John Joseph Nonnenmacher, Bader, Yakaitis & Nonnenmacher, LLP, New York, NY, for Plaintiff.

Megan E. O'Donnell, Suffolk County Attorney's Office, Hauppauge, NY, for Defendants.

## MEMORANDUM AND ORDER

JOSEPH F. BIANCO, District Judge:

Kwame Opoku ("Opoku" or "plaintiff") commenced this action against the County of Suffolk, District Attorney Thomas Spota, the Suffolk County District Attorney's Office, and various "John Does", (collectively, "defendants" or "Suffolk County defendants"), asserting claims under 42 U.S.C. §§ 1983, 1985, and state law arising from his January 19, 2011 arrest by the Southampton Town Police Department and subsequent prosecution. On October 10, 2014, plaintiff filed a stipulation of dismissal with prejudice and the case was closed on the same day. Now before the Court is the defendants' motion for attorney's fees under 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 54(d)(2) in the amount of $6,960.00.

For the reasons set forth below, the Court denies the motion. The Suffolk County defendants contend that the lawsuit "was vexatious, frivolous, and brought for no other reason than to harass and embarrass District Attorney Thomas J. Spota." (Def.'s Mem. at 3.) As a threshold matter, the Court agrees with the Suffolk County defendants that plaintiff's counsel has failed to point to any evidence in his possession at the time of the filing of the complaint to support his conspiracy allegations against the Suffolk County defendants. However, plaintiff's counsel explained in an affirmation to the Court that he filed the lawsuit for the following reasons: (1) in a separate action pending against, among others, the Southampton Town Police Department (which alleges Southampton Police Officer Eric Sickles ("Officer Sickles") planted evidence and gave false testimony in connection the charges against plaintiff), attorneys for the Southampton defendants wrote a letter to Magistrate Judge Brown claiming that plaintiff's conviction was vacated "solely based upon the failure [by the District Attorney's Office] to provide possible impeachment material concerning Officer Sickles' alleged dependency upon prescription drugs" (Nonnenmacher Aff. ¶ 3); (2) an attorney for Bernard Cooks, who lived with plaintiff and was arrested at the same time as plaintiff, had brought an action against the Suffolk County District Attorney's Office, alleging a conspiracy with the Southampton Town police department to falsely arrest Cooks and maliciously prosecute him; and (3) plaintiff's counsel was concerned that an action against the Suffolk County District Attorney's Office would be time-barred if not brought promptly. Plaintiff's counsel further ex-

plained that he attempted to gather evidence to support the plaintiff's claim of conspiracy between the Suffolk County District Attorney's Office and the Southampton Town Police Department in plaintiff's arrest and the alleged suppression of *Brady* material and, after failing to secure such evidence, he agreed to voluntary discontinue the lawsuit approximately five months after filing it.

Given the affirmation of plaintiff's counsel, the Court does not believe that there is a sufficient basis to conclude that plaintiff's counsel brought a vexatious lawsuit simply to harass and embarrass the District Attorney. Defendants have failed to undermine plaintiff's good faith explanation for bringing the lawsuit to try to preserve his client's rights, especially in light of allegations that were being made by another plaintiff (Mr. Cooks) and the statement by the Southampton Police Department in the letter to Magistrate Judge Brown. Moreover, the prompt dismissal of the case after counsel found no evidence to support the allegations of conspiracy further buttresses that the suit was not vexatious or brought in bad faith. Moreover, although plaintiff was unable to uncover any evidence to sustain the allegations of conspiracy (or to overcome prosecutorial immunity), the legal theories themselves were not frivolous on their face. Given the circumstances of this specific case, it was not vexatious and unreasonable for plaintiff's counsel, rather than to immediately discontinue the action upon receipt of defendants' letter seeking such discontinuance, to attempt to conduct an investigation for several months to determine if there was evidence that would sustain the conspiracy allegations. Accordingly, in its discretion, the Court declines to award attorney's fees under the particular circumstances of this case.

### I. Facts

The Court takes the following facts from plaintiff's complaint, unless otherwise noted. On January 19, 2011, Southampton Town Police Officers arrested plaintiff at his home, located at 599 Noyac Road, Southampton, New York, in connection with an investigation of illegal drug activity. (Compl. ¶¶ 24–30.) The officers also conducted a search of plaintiff and his home. (*Id.* ¶¶ 26–27.) Officer Sickles, who was assigned to the Street Crimes Unit, was involved in the search and arrest. (*Id.* ¶¶ 26–30; Pl. Opp. at 1.)

Plaintiff was convicted of the drug charges stemming from the arrest and remained in custody from January 19, 2011 to July 15, 2011. (Compl. ¶ 48.) It later came to light that Officer Sickles was addicted to narcotics. (*Id.* ¶ 50; Pl. Opp. at 1.) This revelation led to a subsequent investigation into the Street Crimes Unit, Officer Sickles, and his supervisor Lieutenant James Kiernan. (Pl. Opp. at 1.) As a result of the investigation, plaintiff's conviction was vacated, and the criminal charges against plaintiff were dismissed on July 24, 2012. (Compl. ¶¶ 54–61.)

The Court notes that on February 21, 2013, prior to filing the instant action, plaintiff filed a separate action against the Town of Southampton and members of the Southampton Town Police Department, including Officer Sickles and Lieutenant Kiernan, asserting claims under § 1983 and § 1985 and under state law, stemming from his January 19, 2011 arrest and conviction. *Opoku v. The Town of Southampton*, 13–CV–094–ADS–GRB (E.D.N.Y. filed Feb. 21, 2013). The case is currently pending in this Court before Judge Spatt.

Plaintiff's counsel, John Nonnenmacher, who filed the instant complaint, avers that attorneys representing the defendants in the parallel civil action against the Southampton defendants notified plaintiff and

Magistrate Judge Brown that "[f]ollowing [Opoku's] release, certain issues came to the attention of the District Attorney's office regarding possible impeachment material (*Brady* material) which was not disclosed concerning Officer Sickles' alleged dependency upon prescription drugs." (Nonnenmacher Aff. ¶ 3.) As a result, in his complaint plaintiff asserts that "[d]uring his prosecution, the District Attorney's Office failed to inform plaintiff's criminal attorney that Eric Sickles was addicted to drugs ... and intentionally withheld information about Eric Sickle's [sic] addition [sic] to drugs." (Compl. ¶¶ 50–52.)

Plaintiff Opoku filed the instant action under §§ 1983, 1985, and state law, on May 1, 2014, claiming that defendants violated his fourth, eighth, and fourteenth amendment rights by falsely arresting, falsely imprisoning, and maliciously prosecuting him under color of law. Plaintiff also alleges in his complaint that the District Attorney's Office "intentionally withheld" potentially exculpatory evidence in violation of their obligations under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). (*Id.* ¶¶ 5052). Plaintiff sought compensatory and punitive damages. (*Id.* ¶¶ 1, 2.)[1]

Specifically, plaintiff brought seven causes of action against defendants: first, false arrest in violation of the Fourth Amendment "[a]s a result of defendant's prosecutorial misconduct" (*Id.* ¶¶ 62–64); second, false imprisonment "[a]s a result of prosecutorial misconduct on the part of the Suffolk County District Attorney's Office" (*Id.* ¶¶ 65–73); third, that the Suffolk County defendants "condoned" and "fur-

thered" plaintiff's arrest and imprisonment "by ignoring a pattern of law enforcement and prosecutorial improprieties and misconduct in order to secure a conviction", "by fail[ing] to train and supervise the Assistant District Attorneys, police officers and [others] ... in their legal obligations, including diligently disclosing exculpatory evidence and disclosing misconduct of the police officers," and that "the acts and conduct" of the defendants "constitut[ed] ... malicious prosecution" (*Id.* ¶¶ 74–81); fourth, deprivation of liberty under the Fourth Amendment and malicious prosecution arising from defendant's failure to turn over exculpatory information as required under *Brady* (*Id.* ¶¶ 83–101); fifth, that the actions of the Assistant District Attorneys resulted in a deprivation of the privileges and immunities guaranteed to plaintiff under the Fourth, Fifth, Seventh, Eighth, and Fourteenth Amendments, and were cruel and unusual punishment to the plaintiff in violation of the Eighth Amendment (*Id.* ¶¶ 103–09); sixth, defendants' actions constituted deliberate indifference to plaintiff's rights under the constitution (*Id.* ¶¶ 110–16); seventh, a *Monell* claim against the County of Suffolk for instituting a practice, policy or custom of "deliberate indifference to constitutional rights," by encouraging the violation of suspects' constitutional rights, by withholding *Brady* material, and by failing to train and supervise regarding *Brady* obligations, which plaintiff asserts directly resulted in a violation of his constitutional rights (*Id.* ¶¶ 117–37).

---

1. In his complaint, plaintiff also makes various allegations, including that the search of his person and his home were unlawful and without a warrant (Compl. ¶¶ 26–27), that the Southampton Town Police Officers, including Officer Sickles, planted narcotics on him (*Id.* ¶ 29), that he was assaulted and battered by the officers during the arrest (*Id.* ¶ 31), that

the officers fabricated evidence and filed false reports against him (*Id.* ¶¶ 36–37), that the officers gave false testimony against him during a grand jury proceeding (*Id.* ¶¶ 39–41), and that he was assaulted and subject to excessive force while in police custody (*Id.* ¶¶ 44–45).

## II. Procedural History

Plaintiff filed the instant action against the County of Suffolk, the Suffolk County District Attorney's Office, and District Attorney Spota on May 1, 2014. Defendants moved to dismiss on July 9, 2014. On August 6, 2015, the Court granted plaintiff's request to extend his time to file his opposition to September 5, 2014. By letter dated September 12, 2014, plaintiff advised the Court that he no longer wished to pursue this action. Plaintiff filed a voluntary stipulation of dismissal with prejudice on October 10, 2014. The case was closed the same day. Defendants moved for attorney's fees on October 23, 2014. Plaintiff opposed the motion on November 13, 2014. Defendants replied on November 24, 2014. The matter is fully submitted.

## III. Discussion

Here, defendants contend that they are entitled to attorney's fees under 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 54(d)(2), on the grounds that plaintiff's action against the Suffolk County District Attorney's Office, District Attorney Spota, and the County was frivolous, unreasonable, and groundless. For the reasons that follow, the Court denies the defendants' motion for attorney's fees.

### A. *Standard for Attorney's Fees under 42 U.S.C. § 1988(b)*

■ "The general rule in our legal system is that each party must pay its own attorney's fees and expenses." *Perdue v. Kenny A. ex rel. Winn,* 559 U.S. 542, 550, 130 S.Ct. 1662, 176 L.Ed.2d 494 (2010). However, 42 U.S.C. § 1988(b) provides that:

In any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title ... title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.], ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs; except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity such officer shall not be held liable for any costs, including attorney's fees, unless such action was clearly in excess of such officer's jurisdiction.

42 U.S.C.A. § 1988(b). Though "[f]ees are regularly awarded to prevailing plaintiffs who obtain some significant measure of relief," *Panetta v. Crowley,* 460 F.3d 388, 399 (2d Cir.2006) (citing, *e.g., Hughes v. Rowe,* 449 U.S. 5, 15–16, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980)), "[t]he Second Circuit has instructed that it should be rare for a prevailing defendant in a § 1983 case to be awarded attorney's fees." *Robinson v. Town of Kent, N.Y.,* No. 11 Civ. 2875(ER), 2012 WL 3024766, at *8 (S.D.N.Y. July 24, 2012) (citing *Sista v. CDC Ixis North Am., Inc.,* 445 F.3d 161, 178 (2d Cir.2006)). The Second Circuit's "hesitan[cy] to award attorney's fees to victorious defendants in § 1983 actions," stems from "concern[s] about the potential chilling effect on § 1983 plaintiffs—who are the chosen instrument of Congress to vindicate a policy of the highest national priority." *Rounseville v. Zahl,* 13 F.3d 625, 631 (2d Cir.1994) (internal quotation marks omitted).

■ Accordingly, when the prevailing party in a § 1983 action is the defendant, attorney's fees will only be awarded if the plaintiff's underlying " 'claim was frivolous, unreasonable, or groundless, or ... the plaintiff continued to litigate after it clearly became so.' " *Rounseville,* 13 F.3d at 632 (quoting *Oliveri v. Thompson,* 803 F.2d 1265, 1272 (2d Cir.1986)) (additional internal quotations omitted); *see also Panetta,* 460 F.3d at 399. The Supreme Court has stated that "[i]n enacting § 1988, ... Congress sought 'to protect defendants from burdensome litigation having no legal or factual basis.' " *Fox v. Vice,* 563 U.S. 826, 131 S.Ct. 2205, 2213, 180 L.Ed.2d 45

(2011) (quoting *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 420, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978)). Accordingly, "[a] claim is frivolous where it lacks an arguable basis either in law or in fact." *Shakur v. Selsky*, 391 F.3d 106, 113 (2d Cir.2004) (internal quotation marks omitted).

### B. *Application*

First, the Court will examine whether or not defendants are "prevailing parties" within the meaning of § 1988. Second, the Court will address whether the plaintiff's suit was "frivolous, unreasonable, and groundless." *Oliveri*, 803 F.2d at 1272. As explained in detail below, the Court concludes that defendants are not entitled to an award of attorney's fees, even though they were the prevailing parties, because they have failed to show that the plaintiff's claims "lack[ed] an arguable basis either in law or in fact" at the time they were filed. *Shakur*, 391 F.3d at 113.

#### i. *Whether Defendants are the Prevailing Parties*

■ On October 10, 2014, plaintiff filed a voluntary stipulation of dismissal with prejudice. (ECF No. 10.) Defendants assert that the filing of the stipulation makes them the prevailing parties in the action. Plaintiff, on the other hand, contends that defendants are not prevailing parties in this action, because the stipulation did "not include any provision allowing the defendants to move for attorneys' fees and there has been no judicial decision on the merits of defendants' motion to dismiss." (Pl. Opp. at 6.)

■ The Second Circuit has noted that "[a] party who 'secure[s] a judgment on the merits or a court-ordered consent decree' is a 'prevailing party'; but a 'voluntary change in the [other party's] conduct' is not enough." *Carter v. Inc. Vill. of Ocean Beach*, 759 F.3d 159, 163 (2d Cir. 2014) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 600, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001)). Indeed, "to 'prevail[ ]' for purposes of attorney's fees, a party ... must have gained through the litigation a 'material alteration of the legal relationship of the parties.'" *Id.* at 165 (quoting *Buckhannon*, 532 U.S. at 604, 121 S.Ct. 1835).

The Second Circuit has concluded that "[a] voluntary dismissal of an action with prejudice works such alteration, because it constitutes 'an adjudication on the merits for purposes of *res judicata*,' and any action so dismissed could not be brought again." *Id.* at 165 (quoting *Chase Manhattan Bank, N.A. v. Celotex Corp.*, 56 F.3d 343, 345 (2d Cir.1995)); *see also Santana Products, Inc. v. Sylvester & Associates, Ltd.*, No. 98 CV 6721(ARR), 2006 WL 7077215, at *4 n. 1 (E.D.N.Y. Nov. 13, 2006) (dealing with an award of attorney's fees under the Lanham Act, but noting "the general rule among the circuits ... that a defendant can constitute a prevailing party for the purpose of fee awards under Rule 54(d) when an action is dismissed with prejudice") (collecting cases); *Mock v. Axelrod*, No. 86 Civ. 2768(CSH), 1991 WL 2861, at *3 (S.D.N.Y. Jan. 3, 1991) ("It is true that a voluntary discontinuance with prejudice under Rule 41(a) terminates the litigation favorably to defendants."). "Because Plaintiffs cannot refile, the judgment has materially altered the parties' legal relationship." *Carter*, 759 F.3d at 165.[2]

---

2. Though the Second Circuit has previously expressed concern that deeming a defendant to be the prevailing party in an action voluntarily dismissed with prejudice may " 'discourage such a salutary disposition of litiga- tion by threatening to award attorney's fees if the plaintiff did not complete a trial,' " *Mock*, 1991 WL 2861, at *3 (quoting *Colombrito v. Kelly*, 764 F.2d 122, 134 (2d Cir.1985)), as discussed *infra*, subsequent cases have uni-

Plaintiff references three cases that he claims support his argument that defendants are not prevailing parties. First, he cites to *Mawere v. Citco Fund Servs., (USA) Inc.,* No. 09 CIV. 1342(BSJ)(DF), 2011 WL 744898 (S.D.N.Y. Feb. 7, 2011) in an effort to bolster his assertion that defendants did not prevail in this action, because they failed to include in the stipulation a provision reserving their right to move for attorney's fees. However, *Mawere* involved a case where the defendant had "expressly reserved the right to seek fees and costs" and "plaintiff's claims [had] been dismissed voluntarily." 2011 WL 744898, at *3. The Magistrate Judge, in his Report and Recommendation, concluded that under such circumstances "[a] defendant will be considered a 'prevailing party' [under Section 1988]." *Id.* In *Mawere*, the Magistrate Judge did not address whether a defendant would be a prevailing party if he had not explicitly reserved the right to move for attorney's fees in the stipulation, and even if the Court had made such a pronouncement, it would have been dictum. Accordingly, any attempt to extend the Magistrate's conclusion to the instant case is purely speculative.

Second, plaintiff relies on a case that that the Magistrate Judge in *Mawere* cited—*Nemeroff v. Abelson,* 620 F.2d 339 (2d Cir.1980). In *Nemeroff,* the Second Circuit, also considering a defendant who expressly reserved his right to move for attorney's fees, stated that "[i]t is true that generally the defendant is not considered the prevailing party when, as here, there is a voluntary dismissal of the action by the plaintiff with prejudice." 620 F.2d at 350. However, in a 2014 opinion, *Carter v. Incorporated Village of Ocean Beach,* the Second Circuit declined to reaffirm *Nemeroff's* proclamation, deeming it solely dictum "because the order of dismissal in that case expressly reserved defendants' right

to move for costs," and "[t]he court had no occasion to apply the rule it posited." 759 F.3d at 165–66. The Second Circuit in *Carter* also noted that the Tenth Circuit case *Nemeroff* cited to support its proposition (*Mobile Power Enterprises, Inc. v. Power Vac, Inc.,* 496 F.2d 1311 (10th Cir. 1974)) was subsequently overruled by the Tenth Circuit, and stressed that the pronouncement in *Nemeroff* is "in tension with subsequent case law from the Supreme Court." *Carter,* 759 F.3d at 165. Accordingly, because the *Nemeroff* dictum contradicts the reasoning of the Supreme Court in *Buckhannon* and *Chase Manhattan Bank, N.A.* (cited and quoted above) and because it also has "no redeeming justification," the Second Circuit has rejected it, and accordingly, so does this Court. *Carter,* 759 F.3d at 165–66.

Third, and finally, plaintiff cites to *Fernandez v. Southside Hosp.,* 593 F.Supp. 840 (E.D.N.Y.1984) to support his argument that defendants are not prevailing parties. However, in that case, the court concluded that the defendants were not the prevailing parties because the plaintiff had filed a voluntary dismissal without prejudice—which is clearly distinguishable from the case at hand.

As the Court has explained, the Second Circuit has clearly held that a defendant in an action that is voluntarily dismissed with prejudice is a prevailing party for the purposes of determining whether attorney's fees are warranted under § 1988 and Rule 54(d). Accordingly, in this instant action, the Court finds that, despite plaintiff's assertions to the contrary, defendants are the prevailing parties.

### ii. *Whether Plaintiff's Claims were Frivolous, Unreasonable, or Groundless*

■ Having concluded that defendants are the prevailing parties under § 1988,

formly held that a defendant is the prevailing party under such circumstances.

the Court now considers whether the plaintiff's claims were "frivolous, unreasonable, or groundless." *Rounseville*, 13 F.3d at 632. "The determination as to whether a claim was frivolous, unreasonable, or groundless is not a purely factual inquiry. Questions as to what allegations were made and what evidence was presented are questions of fact; but the determination as to whether the claims were frivolous, unreasonable, or groundless requires an evaluation of the allegations and the proof in light of the controlling principles of substantive law." *LeBlanc–Sternberg v. Fletcher*, 143 F.3d 765, 770 (2d Cir.1998).

■■■ The Second Circuit has noted that, "[t]hough a showing that the plaintiff acted in bad faith will further support an award under section 1988, the determination generally turns on whether the claim itself is clearly meritless." *Rounseville*, 13 F.3d at 632 (citing *Davidson v. Keenan*, 740 F.2d 129, 133 (2d Cir.1984)). Notably, "[c]ertain types of judicial rulings strongly indicate that a plaintiff's claim should not be deemed frivolous.... For example, a court cannot properly consider a claim to be frivolous on its face if it finds that the plaintiff must be allowed to litigate the claim." *LeBlanc–Sternberg*, 143 F.3d at 770. Similarly, "a claim [cannot] properly be deemed groundless where the plaintiff has made a sufficient evidentiary showing to forestall summary judgment and has presented sufficient evidence at trial to prevent the entry of judgment against him as a matter of law." *Id.* at 771.

■■■ However, in making this determination, "'it is important that a district court resist the understandable temptation to engage in *post hoc* reasoning by concluding that, because a plaintiff did not ultimately prevail, his action must have been unreasonable or without foundation.'" *Tancredi v. Metro. Life Ins. Co.*, 378 F.3d 220, 230 (2d Cir.2004) (quoting *Christiansburg*, 434 U.S. at 421–22, 98 S.Ct. 694) (considering a comparable attorney's fee provision under Title VII). "The fact that a plaintiff may ultimately lose his case is not in itself a sufficient justification for the assessment of fees." *Hughes v. Rowe*, 449 U.S. 5, 14, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (extending the holding of *Christiansburg* in the Title VII context to claims for attorney's fees in civil rights actions under 42 U.S.C. § 1983); *see also LeBlanc–Sternberg*, 143 F.3d at 770.

■■■ In the instant case, plaintiff filed a stipulation of discontinuance before the defendants' motion to dismiss was fully briefed and considered by the Court. Both plaintiff and defendants contend that they would have prevailed had the Court ruled on the motion. Defendants specifically assert that the fact that the Court would have dismissed plaintiff's claims further supports concluding that plaintiff's complaint was frivolous under § 1988. However, the Court notes that, even if plaintiff's claims were dismissed under Rule 12(b)(6), it does not necessarily follow that they were unreasonable or frivolous. *Tancredi*, 378 F.3d at 230 (finding that a § 1983 claim not frivolous under § 1988, even though the Court had dismissed the claim under Rule 12(b)(6)). Even if "[h]indsight proves that plaintiff['s] allegation[s]" were "very weak," even weak enough to warrant dismissal upon a 12(b)(6) motion, it does not mean that they were "completely without foundation." [3]

---

**3.** The Court notes that the Supreme Court has recognized that "a defendant may deserve fees [under § 1988] even if not all the plaintiff's claims were frivolous." *Fox*, 131 S.Ct. at 2214. Section 1988 "serves to relieve a defendant of expenses attributable to frivolous charges," but "when the plaintiff's suit also includes non-frivolous claims," "[t]he defendant ... is not entitled to any fees arising from these non-frivolous charges." *Id.* That said, "the presence of reasonable allegations in a suit does not immunize the plaintiff against paying for the fees that his frivolous

*Id.*

Defendants make a number of additional arguments to support their claim that the plaintiff's complaint was frivolous and vexatious. The Court will address each of their arguments in turn.

■ First, defendants argue that the plaintiff's claims of false imprisonment and malicious prosecution associated with the drug investigation and his January 19, 2011 arrest are frivolous, because "neither Suffolk County nor the Offices of the Suffolk County District Attorney had any involvement in the investigation of Plaintiff's illegal activities ... [nor did they have] ... any control, at all, over whether or not Plaintiff was investigated and arrested by Southampton Town." (O'Donnell Aff. ¶ 4.) Because plaintiff filed the instant complaint after completing about a year of discovery in the companion case against the Southampton Town defendants, defendants assert that "plaintiff knew, or had reason to know, that the County defendants took no part in the investigation into plaintiff's illegal drug activity, or in plaintiff's arrest." (Def. Mem. at 7; *see also* O'Donnell Aff. ¶ 14.) Further, defendants contend that "a basic understanding of the jurisdictional and geographic boundaries of the Southampton Police Department reveals that Suffolk County had absolutely no control or influence over the manner in which the Southampton Town police officers conducted the investigation or arrest." (O'Donnell Aff. ¶ 14; *see also* Def. Mem. at 7–8.) Based on this, defendants argue that plaintiff "would have known that the only actions taken by the Suffolk County District Attorney were ... the prosecution of the plaintiff (to which the prosecutor would be entitled to immunity); and next the instigation of the investigation into ... Officer [ ] Sickles that ultimately inured to plaintiff's benefit." (Def. Mem. at 8.)

However, here, although plaintiff's counsel clearly knew the arrest was made by Southampton Police Department, plaintiff's legal theory was that a conspiracy existed between Suffolk County District Attorney's Office and the Southampton Town Police Department, wherein both parties "conspired ... in the false arrest of plaintiff, and in the suppression of *Brady* material." (Nonnemacher Aff. ¶ 6.) Specifically, plaintiff asserts that "[d]uring the initial stages of his criminal prosecution, the Assistant District Attorney assigned to plaintiff's prosecution entered into a conspiracy with Southampton Town Police Officers to withhold and/or suppress information concerning Police Officer Eric Sickles' addiction to narcotics." (Pl. Opp. at 1.)

The Second Circuit has cautioned that the Supreme Court's guidance in *Christiansburg* (namely, that courts should avoid deeming a complaint frivolous merely because a plaintiff ultimately did not prevail) "is particularly pertinent to cases involving allegations of conspiracy. Conspiracies are 'by their very nature secretive operations that can hardly ever be proven by direct evidence.'" *LeBlanc-Sternberg*, 143 F.3d at 770 (citing *Rounseville*, 13 F.3d at 632). The Circuit stressed that "unsuccessful conspiracy claims are not unreasonable merely because they were based principally, or even entirely, on circumstantial evidence." *Id.*

In this case, plaintiff's counsel avers that he filed the instant action shortly after the attorneys representing the

claims imposed." *Id.* "If a 'plaintiff assert[s] both frivolous and non-frivolous claims,' then a court may grant to a defendant only those fees 'that the defendant would not have incurred but for the frivolous claims.'" *Carter*, 759 F.3d at 163 (quoting *Fox*, 131 S.Ct. at 2211). "Allegations that, upon careful examination, prove legally insufficient to require a trial are not, for that reason alone, 'groundless' or 'without foundation' as required by *Christiansburg*." *Hughes*, 449 U.S. at 15–16, 101 S.Ct. 173.

Southampton Town Police Department filed a letter, dated April 1, 2014, in the parallel action against the Southampton Town defendants. The letter notified plaintiff and the Court that "[f]ollowing [Opoku's] release, certain issues came to the attention of the District Attorney's office regarding possible impeachment material (*Brady* material) which was not disclosed concerning Officer Sickles' alleged dependency upon prescription drugs ... [T]he District Attorney vacated these sentences solely based upon the failure to provide possible impeachment material." (Nonnenmacher Aff. ¶ 3.) Around the same time the letter was filed, Bernard Cooks, who was arrested with plaintiff and whose conviction was also vacated due to the investigation of Officer Sickles, filed a complaint alleging that the Suffolk County District Attorney's Office conspired with the Southampton Town Police department to falsely arrest and maliciously prosecute him.[4] (Nonnenmacher Aff. ¶ 4.) Plaintiff's counsel asserts that he filed the instant complaint on May 1, 2014 based on circumstantial evidence of a conspiracy between the Southampton Town Police and the Suffolk County defendants, relying in part on the contents of the letter and on the allegations in Cook's complaint. (*Id.* at ¶ 5.) Plaintiff's counsel also noted that he filed at that time because he was concerned that an action against the Suffolk County District Attorney's Office would be time-barred if not brought promptly. (*Id.*) Plaintiff's counsel notes that "[a]fter receiving defendants' motion to dismiss," he "attempted to gather more evidence to support the contention that the Suffolk County District Attorney's Office conspired with the Southampton Town Police

Department in the false arrest of plaintiff, and in the suppression of *Brady* material" but "[u]nfortunately ... was unable to secure this further evidence." (*Id.* ¶ 6.)

After considering these factors, the Court, recognizing that a plaintiff frequently must turn to circumstantial evidence in conspiracy cases to try to support his pleadings, (see *LeBlanc–Sternberg*, 143 F.3d at 770), concludes that plaintiff's conspiracy claims against the Suffolk County defendants related to the January 19, 2011 arrest and investigation, though extremely weak, were not frivolous (on their face) or vexatious when they were filed.

The Court now moves to the defendants' second argument in support of their contention that the plaintiff's complaint was frivolous. In particular, defendants assert that plaintiff had no basis for filing suit against the Suffolk County District Attorney's Office and District Attorney Spota, because "it was the District Attorney's Office that, once made aware of the allegations of the officer's drug dependency, decided to proactively investigate the officer and the officer's relationship to Plaintiff's arrest" and "that decided to vacate the criminal conviction of Plaintiff, with prejudice." (O'Donnell Aff. ¶ 7.) Stressing that "plaintiff's conviction would not have been vacated and plaintiff would not have been restored his liberty" absent the action of District Attorney Spota, defendant contends that "it can be reasonably concluded that the instant lawsuit against the County defendants was not only frivolous, but vexatious and brought with no other intent than to harass or embarrass District Attorney Thomas Spota, III."[5] (Def. Mem. at 8.) The Court

---

**4.** In the Bernard Cooks case, the Suffolk County District Attorney's Office was terminated on March 11, 2014 by a stipulation between the parties, because the entity was an arm of the County of Suffolk. The County of Suffolk was dismissed as a defendant with

prejudice on August 4, 2014 by stipulation, without costs or attorney's fees to either party. *Cooks v. County of Suffolk, et al.*, 13–CV–3460–LDW–AKT (E.D.N.Y.).

**5.** Defendants also assert that the claims against District Attorney Spota for punitive

disagrees. The fact that a district attorney's office took steps to release a plaintiff under these circumstances does not automatically negate the possibility that a prosecutor or investigator could have previously done something that could give rise to a potential claim under § 1983 or state law. Again, although plaintiff failed to uncover evidence to support such a conspiracy in this case, there is no basis for this Court to conclude that the allegation was made with knowledge of its falsity or in bad faith. Accordingly, the Court concludes that this argument does not support awarding attorney's fees.

■■■■■ As a third argument, defendants assert that plaintiff's claims against the District Attorney's Office were frivolous, because they were barred by prosecutorial immunity. "It is ... well established that 'a state prosecuting attorney who acted within the scope of his duties in initiating and pursuing a criminal prosecution' 'is immune from a civil suit for damages under § 1983.'" *Shmueli v. City of New York*, 424 F.3d 231, 236 (2d Cir.2005) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 410, 431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976)) (internal citation omitted); *see also Roche v. Vill. of Tarrytown*, 309 A.D.2d 842, 766 N.Y.S.2d 46, 47 (2003) (state law absolute immunity). Notably, "[p]rosecutorial immunity from § 1983 liability is broadly defined, covering 'virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate.'" *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir.1995) (quoting *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir.1994)). For example, in *Hill*, the Second Circuit held than an Assistant District Attorney's alleged acts of, inter alia, "conspiring to

present falsified evidence to, and to withhold exculpatory evidence from, a grand jury" and "deliberately suppressing *Brady* material" were "clearly protected by the doctrine of absolute immunity as all are part of his function as an advocate." *Id.* at 661; *see also Peay v. Ajello*, 470 F.3d 65, 67–68 (2d Cir.2006) ("Plaintiff's claims against [his prosecutor], which encompass activities involving the initiation and pursuit of prosecution [including fabricating evidence used at trial, withholding exculpatory evidence, suborning perjury, and attempting to intimidate him into accepting a guilty plea], are foreclosed by absolute prosecutorial immunity, regardless of their alleged illegality."). Thus, "[i]t is well-settled that prosecutors performing prosecutorial activities that are 'intimately associated with the judicial phase of the criminal process' are entitled to absolute immunity from an action for damages under § 1983." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 530 (2d Cir.1993) (quoting *Imbler*, 424 U.S. at 430, 96 S.Ct. 984); *see Anilao v. Spota*, 774 F.Supp.2d 457, 476–78 (E.D.N.Y.2011) (detailing standard).

■■■■ However, a prosecutor does not enjoy absolute immunity for "those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." *Imbler*, 424 U.S. at 430–31, 96 S.Ct. 984. In the instant action, plaintiff's counsel notes that he "was aware of the law regarding prosecutorial immunity, but had a good faith basis to believe that this action would fall into the exceptions ... for acts outside the function of a prosecutor." (Nonnenmacher Aff. ¶ 6.) Given

damages had "no basis in fact or law and can only be classified as vexatious, frivolous, unreasonable, and groundless" because Mr. Spota had "no personal involvement" in the prosecution and plaintiff knew it. (O'Don-

nell Aff. ¶ 7.) For similar reasons to those articulated above related to the conspiracy allegations and the claims against the District Attorney's Office in general, the Court finds defendants' arguments unpersuasive.

plaintiff's contention that a conspiracy existed between Southampton Town Police and the Suffolk County District Attorney's Office, it is conceivable, though unlikely, that plaintiff might have uncovered facts to support plaintiff's claim that the District Attorney's Office was acting in an administrative or investigative function (rather than as an advocate) in allegedly conspiring with Southampton Police to falsely arrest plaintiff and to withhold exculpatory information.[6] Accordingly, the Court cannot find that plaintiff's attempt to raise legal theories that would support finding that defendants' alleged actions fell within an exception to prosecutorial immunity was frivolous on its face, was done in bad faith, or, for any other reason, warrants the award of attorney's fees under § 1988.

■ Finally, defendants contend that plaintiff's *Monell* claims against the County of Suffolk are also groundless for two reasons.[7] First, they assert that "[p]laintiff utterly failed to plead (let alone, sufficiently plead) a pattern of similar violations [namely, violations of obligations under *Brady*] that would necessarily establish the County itself had violated the Constitution." (O'Donnell Aff. ¶ 15.) Though defendants highlight plaintiff's failure "to sufficiently articulate what single *Brady* violation was committed by any prosecutor" or "to identify the point in time any prosecutor allegedly knew of the police officer's alleged improprieties," that failure does

not necessarily suggest to the Court that the complaint was frivolous, vexatious, or filed in bad faith. (Def. Mem. at 6.) Defendant cites to *Connick v. Thompson*, 563 U.S. 51, 131 S.Ct. 1350, 179 L.Ed.2d 417 (2011), which held that "a pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference," to argue that plaintiff must demonstrate a pattern of *Brady* violations in order to support its § 1983 deliberate indifference claim against the County for failure to adequately train prosecutors regarding their *Brady* obligations. *Id.* at 1353. However, the Supreme Court in *Connick* was considering a motion for judgment as a matter of law after trial, not a motion for attorney's fees under § 1988 after a matter had been voluntarily dismissed with prejudice before discovery and trial. Here, plaintiff pled that defendant failed to properly train or supervise its employees and had a "policy and procedure of ignoring a pattern of prosecutorial improprieties and misconduct." (Compl. ¶ 130.) Though that pleading lacked specific allegations to support a plausible claim, the Court concludes that such absence of specific allegations is not a sufficient basis to conclude that the plaintiff's claim was frivolous or vexatious when filed.

Defendants also contend that "[t]he manifest shortcoming in plaintiffs' *Monell*

---

**6.** As a result, the instant action is distinguishable from *Aretakis v. Durivage*, No. 07–CV–1273 (RFT), 2009 WL 249781 (N.D.N.Y. Feb. 3, 2009), which found that continuing to bring a claim when it is *well-settled* that absolute prosecutorial immunity applies constitutes an unreasonable and frivolous action and warrants the award of attorney's fees.

**7.** In addition, defendants assert that plaintiff's *Monell* claim is "void of any … facts … to establish that a custom and/or policy of the County caused a violation of the plaintiffs'

constitutional rights" noting that plaintiff's "speculative assertions" that the "acts and conduct of the County violated his rights" are "insufficient to support a *Monell* claim against the County" under the motion to dismiss standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). (Def. Mem. at 5.) However, as discussed above, even if plaintiff's *Monell* claims could not survive a motion to dismiss, it does not necessarily follow that they are frivolous under § 1988.

claim is that he does not seek to hold defendant Suffolk County liable for claimed constitutional transgressions by its own employees, but for Suffolk's alleged failure to prevent (alleged) misconduct of the employees of the Southampton Town Police Department, a separate and independent municipality." (Def. Mem. at 6.) Defendants assert that "[t]here is just no precedent for holding a municipality liable under *Monell* for failing to prevent misconduct by employees of another municipality" or "for failing to train persons it did not hire and cannot supervise, discipline or terminate." (*Id.* at 6–7.) However, as explained above, plaintiff's complaint was grounded on the allegation that the Suffolk County District Attorney's Office conspired with the Southampton Town Police Department in establishing policies to encourage the suppression of *Brady* material. Although that theory may be factually and legally weak, the Court is unaware of any case authority that would preclude a plaintiff from attempting to prove such unconstitutional conduct as a matter of law. Accordingly, in its discretion, the Court declines to award attorney's fees on this basis.

In sum, although plaintiff's allegations of conspiracy between the County of Suffolk and the Southampton Town Police have not been borne out, the Court concludes that his complaint against defendants was not frivolous, unreasonable, or groundless when filed. "As the Court noted in *Christiansburg*, even if the law or the facts are somewhat questionable or unfavorable at the outset of litigation, a party may have an entirely reasonable ground for bringing suit." *Hughes*, 449 U.S. at 15, 101 S.Ct. 173. In this case, based upon the affirmation of plaintiff's counsel, the Court concludes that plaintiff "reasonably could have believed, when he commenced this action, that facts unfavorable to the ... Defendants might emerge during discovery or trial." *Carter v. City of Philadelphia*, 97–

CV–4499, 2000 WL 1273008, at *7 (E.D.Pa. Aug. 29, 2000).

After filing the complaint, plaintiff attempted to adduce evidence showing that there was a conspiracy between Suffolk County and Southampton Town Police, and once such evidence was not uncovered, plaintiff voluntarily withdrew his complaint with prejudice. "[B]y voluntarily dismissing his claims, [plaintiff] implicitly expressed his recognition that he could not proceed to trial with nothing more than mere speculation. Having failed to obtain credible, non-speculative evidence, [plaintiff] appropriately filed a voluntary dismissal rather than continuing to press unsubstantiated claims. Although the facts appeared unfavorable at the outset, and [plaintiff] ultimately did not prevail, the Court declines to find that [plaintiff] did not have a reasonable ground for bringing suit simply because his claims [regarding the conspiracy between Suffolk County and the Southampton Police department] were based largely on speculation." *Carter*, 2000 WL 1273008, at *7.

Moreover, this is not a situation where a plaintiff continued to litigate claims after it became clear that such claims were legally or factually frivolous. *LeBlanc–Sternberg*, 143 F.3d at 770 (quoting *Christiansburg*, 434 U.S. at 422, 98 S.Ct. 694 and citing *Hughes*, 449 U.S. at 14, 101 S.Ct. 173.) After considering the timeline and the procedural history of this case, and explanations of plaintiff's counsel, the Court rejects defendants' argument that plaintiff pursued the action after recognizing it was frivolous. Though defendants assert that they repeatedly warned plaintiff that his claims were frivolous and that they would pursue attorney's fees, based on the reasons explained above, the Court does not conclude that the plaintiff improperly continued to litigate the claim. For the purposes of deter-

mining whether attorney's fees are warranted under § 1988, the Court concludes that, under the specific circumstances of this case, it was not unreasonable, frivolous, or vexatious for plaintiff's counsel, especially in light of the allegations by plaintiff Cooks in another lawsuit, to file the lawsuit to avoid any statute of limitations problems and attempt to conduct a limited investigation to attempt to substantiate the conspiracy allegations.

The Court's conclusion is consistent with, and furthers the purpose behind, the rigorous standard for awarding attorney's fees under § 1988—that is, it "avoid[s] chilling the initiation and prosecution of meritorious civil rights actions." *LeBlanc–Sternberg*, 143 F.3d at 770. The instant matter is clearly not a case where plaintiff continued to push his claims once he recognized that the facts did not support them. To impose attorney's fees in this case could discourage potentially valid civil rights claimants from filing actions under § 1983. Moreover, an award could also discourage a plaintiff from quickly discontinuing such an action if evidence substantiating such claims is not found, because such discontinuance could be construed as supporting an inference that the claims were necessarily frivolous when brought. Accordingly, the Court, in its discretion, declines to award attorney's fees in this case.

### IV. CONCLUSION

For the reasons set forth herein, the Court denies defendants' motion for attorney's fees under 42 U.S.C. § 1988 and Federal Rule of Civil Procedure 54(d)(2).

SO ORDERED.